WILLIAM M. MERRICK, Administrator of DANIEL WARFILD *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Condemnation of property for the Improvement of Jones' Falls— Judgment inadvertently entered by the Clerk without authority, should be Stricken out— Writ of Mandamus denied.*

Certain leasehold property in the City of Baltimore, belonging to the estate of W. was condemned by the Board of Commissioners for the improvement of Jones' Falls, pursuant to certain ordinances of the City of Baltimore and Acts of Assembly, authorizing said improvement. The Board of Commissioners awarded only the sum of $6,666.67, and the administrator of W. being dissatisfied with the award, appealed to the Baltimore City Court. Upon a trial before a jury, the jury brought in and returned their inquisition, and awarded as damages for the property condemned the sum of $40,000. This inquisition was duly filed in Court on the 29th of November, 1873. On the 1st of December following, the Mayor and City Council of Baltimore filed a motion to set aside the inquisition. This motion was overruled by the Court on 31st of January, 1874, and on the same day "judgment on inquisition" was entered on the docket. On the 6th of May following an order for a *fieri facias* on said judgment was filed, but the clerk, under the instructions of the Court, refused to issue it. On the 9th of May, a petition was filed praying the Court to direct the clerk to issue the *fieri facias* as ordered; and on the same day the Mayor and City Council of Baltimore filed a motion to strike out the docket entry of judgment. Both of these motions were overruled. A demand was made by the administrator of W. upon the Mayor, Register and Comptroller of the City to pay him the $40,000 so awarded him as administrator, by the jury, or to invest that amount in City five per cent. stock for his use and benefit, pursuant to the provisions of the ordinance for the improvement of Jones' Falls. This demand was refused. Thereupon the administrator of W. filed his petition asking that a writ of *mandamus* might issue, commanding the Mayor, Comptroller and Register to take all necessary and legal means to pay him the said sum of $40,000 or to invest that amount in City five per cent. stock. The Court dismissed the petition. On appeal by the petitioner, it was HELD :

1st. That the judgment upon the inquisition of the jury, having been entered inadvertently by the clerk without authority, ought to have been stricken out.

2nd. That no authority was conferred upon the Court to enter such judgment, by the Acts of Assembly or Ordinances under which the proceedings were had.

3rd. That the application for a writ of *mandamus* was properly denied.

APPEAL from the Baltimore City Court.

The petition of Henry M. Warfield, as administrator of Daniel Warfield, deceased, filed in this case on the 22nd of July, 1874, represented that the Mayor and City Council of Baltimore, under and in pursuance of the Acts of 1870, ch. 113, and 1870, ch. 115, authorizing and empowering them to improve Jones' Falls, and to issue bonds to an amount not exceeding two million five hundred thousand dollars, for that purpose, passed various City Ordinances for the purposes aforesaid, one of which, entitled "An ordinance to authorize the issuing of the bonds of the City of Baltimore, for the purpose of providing means for the improvement of Jones' Falls," approved 31st of January, 1870, having been duly submitted to a vote of the legal voters of the City of Baltimore, and approved by a majority of the said legal voters, in accordance with the terms and provisions of the Act of 1870, ch. 113, approved March 23rd, 1870, became and was valid and binding in law upon the said Mayor and City Council of Baltimore; that afterwards, to wit, on the 24th of April, 1872, and on the 7th of May, 1873, and on the 8th of July, 1873, other Ordinances of the Mayor and City Council of Baltimore were duly passed and approved, touching the improvement of Jones' Falls, which said Ordinances are numbered respectively, number 51, number 57 and number 87; that afterwards the said Mayor and City Council of Baltimore, pursuant to the powers conferred upon them by the Acts of Assembly before recited, and the terms and provisions of

the City Ordinances aforesaid, began and entered upon the improvement of Jones' Falls, and through their Commissioners, duly nominated and legally appointed, confirmed and qualified as the Board of Commissioners for the improvement of Jones' Falls, proceeded to condemn certain leasehold estate belonging to the petitioner, as the surviving administrator of the late Daniel Warfield, lying and being in the City of Baltimore, and which it was requisite and necessary to condemn in order to make and complete the aforesaid improvement of Jones' Falls; and that said Board of Commissioners awarded the petitioner $6666.67, as damages for the property so condemned as aforesaid; that being dissatisfied with the said award the petitioner availed himself of the legal rights given and secured to him under the laws and Ordinances hereinbefore recited, and prayed an appeal to the Baltimore City Court; and that upon a trial of his said cause therein before a jury, the jury brought in and returned their inquisition, and awarded him, as administrator as aforesaid, as damages for the property so condemned, the sum of $40,000, which said inquisition was duly filed in said Court on the 29th of November, 1873; that afterwards, to wit, on the 1st of December, 1873, the Mayor and City Council of Baltimore, by its solicitor, filed in said Court a motion and reasons to set aside the inquisition filed, which said motion was argued and held *sub curia,* and on the 31st of January, 1874, was overruled, and same day judgment on inquisition was rendered, ratifying and confirming the same; that afterwards, to wit, on the 6th day of May, 1874, the petitioner filed in said Court, an order for a *fieri facias* on the above judgment, and the clerk refused to issue the execution under instruction, received from the Court; and that on the 9th day of May, 1874, the petitioner filed in said Court a petition praying the Court to order and direct the clerk to issue the *fieri facias* as directed or ordered; and that on the same day, the Mayor and City Council of Baltimore,

by their attorneys, filed a motion to strike out the docket entry of judgment. Both of said motions were argued and submitted to the Court; and on the 23rd of June, 1874, the Court filed an opinion overruling both motions.

It was further stated, that the petitioner was advised that under the law he acquired, and still had, as administrator as aforesaid, a vested right in and to said judgment for $40,000.00 rendered as aforesaid, the same still being in full force and effect. And that he was further advised, that, according to the terms and provisions of the 21st section of the City Ordinance of April 24, 1872, before referred to, he was entitled to receive from the Mayor and City Council of Baltimore, the aforesaid sum of forty thousand dollars, or to have that amount of money invested in the city five per cent. stock for his use and benefit; and further, that he was advised that he was entitled to the State's writ of mandamus, directing and commanding the Board of Commissioners for the improvement of Jones' Falls, to pay to him the sum of forty thousand dollars awarded to him as damages as aforesaid, or to invest that amount of money in the city five per cent. stock for his use and benefit, but that inasmuch as he was further advised, the Mayor and City Council of Baltimore had attempted, by an Ordinance approved May 27th, 1874, and numbered 40, to repeal all prior Ordinances for the improvement of Jones' Falls; and had under the terms and provisions of the last mentioned Ordinance, actually removed from office "The Board of Commissioners for the Improvement of Jones' Falls," so that the said Board had no longer the custody or control of the plats, books and papers relating to the improvement of Jones' Falls, and was therefore unable to give the petitioner the relief to which he was entitled as aforesaid, he had made a demand upon the Honorable Joshua Vansant, the Mayor of the City of Baltimore, John A. Robb, Register of the City of Baltimore, and Samuel Maccubbin,

Comptroller of the City of Baltimore, requesting and requiring them to pay him the said sum of $40,000, awarded him as aforesaid, or to invest that amount of money for his use and benefit in the city five per cent. stock, as such administrator; so that he might have, use, receive, take and enjoy the same as he was legally entitled to do; but they had each and all of them refused, and still refused to comply with the said demand; and they would neither pay him the said sum of forty thousand dollars, nor invest the same for his use and benefit in city five per cent. stock, as aforesaid; the petitioner therefore prayed, that a rule might be laid upon the Mayor and City Council of Baltimore, Joshua Vansant, Mayor of the City of Baltimore, Samuel Maccubbin, Comptroller of the City of Baltimore, and John A. Robb, Register of the City of Baltimore, requiring them, and each of them to show cause within such time as might be therein limited, why a writ of mandamus should not be issued as prayed; and that upon the return of the said rule, a writ of mandamus might issue, directing and commanding the said Mayor and City Council of Baltimore, Joshua Vansant, Mayor of the City of Baltimore, Samuel Maccubbin, Comptroller of the City of Baltimore, and John A. Robb, Register of the City of Baltimore, to use and take all necessary, legal and proper means to pay the petitioner the said sum of forty thousand dollars, so awarded him, as administrator as aforesaid, or to invest that amount of money for his use and benefit, in the city five per cent. stock, as such administrator.

The defendants answered this petition: They denied that any judgment was rendered by the Court, or on its order, and also that the entry made by the clerk, indicated that the judgment entered was a judgment of ratification and confirmation, as stated in the petition, or a judgment *quod recuperet.* They were advised, that the said Court had no power or jurisdiction to enter on said appeal

a judgment *quod recuperet,* or a judgment of confirmation and ratification, or to do more than to cause the proceedings and decisions on the return of said Commissioners, and on said appeal to be entered in the book containing the record of the proceedings of said Commissioners, certified by the clerk under the seal of the Court, and the book to be transmitted to the Register of the City.

The respondents denied that the petitioner had any vested right in any "judgment of $40,000," rendered upon said inquisition, and that any judgment of or for $40,000, was ever rendered on said inquisition, and they were advised and alleged, that the proceedings of said Board of Commissioners, and of the City Court upon appeal therefrom, even if the Ordinances under which said proceedings were taken, had not been repealed, would not have given the petitioner a right to recover said sum of $40,000 from the Mayor and City Council of Baltimore. They further showed, that the Ordinance and Ordinances under which all proceedings which were taken by said Board in reference to the petitioner's property, and under which the petitioner's said appeal was prayed, and all proceedings thereon, as recited, were had, were repealed by Ordinance No. 40, approved May 27th, 1874, and the said Board of Commissioners was thereby abolished; they were also advised that the Ordinances for the improvement of Jones' Fall, having been passed in the exercise of a political legislative power, vested in the said Mayor and City Council for the public good, said Ordinances were subject to repeal by it, if in its judgment, the public good required, and said Ordinances having been validly repealed, the proceedings which had been had thereunder, became inoperative and of no effect.

The respondents further showed and alleged, that the said Mayor and City Council had never acquired any title or right of possession to the said property, and had never interfered with the petitioner's alleged right of complete

ownership over the same; and further, that by Ordinance
No. 4, approved February 12th, 1874, provision was made
subject to the sanction of the General Assembly, and of
the popular vote, for the issue of $1,500,000 additional
bonds, which it was found would be necessary, in order to
complete said improvement on the plan then contem-
plated; that the sanction of the General Assembly was
subsequently given by Act of 1874, chapter 179, but the
said last mentioned Ordinance was disapproved of and
defeated by a majority of the voters at the popular elec-
tion had thereon; that the defeat of said Ordinance was
a popular condemnation of the plan of improvement then
contemplated, and also, that its defeat and the subsequent
repeal by Ordinance No. 40, of 1874, of all Ordinances
under which all proceedings had been taken in the pre-
mises, were caused, in a great measure, by what was
thought to be the excessive valuation put upon the said
property, and other property, which according to the plan
then contemplated, it would have been necessary to ac-
quire.   The respondents further answering, were advised,
that the petitioner had no right to the payment or invest-
ment of said $40,000, as demanded, or of any part thereof,
nor any just claim therefor ; and further, that if he had
any such right, or just claim, he had a clear, specific,
ready and adequate remedy at law therefor ; and that
even if the premises otherwise showed a case proper for
the issuing of the writ of mandamus, that the prayer of
said petition, in invoking the Court to issue a writ of man-
damus commanding the said Mayor and City Council *"to
use and take all necessary legal and proper means"* to pay
said $40,000, or invest the same, was fatally defective and
insufficient, in that it was too general and did not point to
any specific act or duty to be commanded or performed;
nor advise the Mayor and City Council what specific act
or duty it was claimed would be the "necessary means"
referred to, which information, the said Mayor and City

Council ought to have, in order to its full and adequate defence.

The opinion delivered by Judge BROWN on the 23rd day of June, 1874, and referred to in the petition, was as follows :

"This case comes before the Court on the appeal of Henry M. Warfield, Adm'r of Daniel Warfield, from the allowance made to him for damages for property condemned by 'The Board of Commissioners for the improvement of Jones' Falls.' The allowance made by the Commissioners was $6666.67, and that made by the inquisition of the jury empannelled in this Court is $40,000. After the inquisition was found by the jury, a motion was made by the city to set aside the inquisition on various grounds, but the only one insisted on in argument was, that the Court had erred in certain of its instructions to the jury. This motion was overruled by the Court. Thereupon, the clerk of this Court acting in pursuance of what he considered the established practice, but without authority or any instructions from the Court, entered on the docket of this Court, 'judgment on inquisition.' The case now comes up on two motions, both made on the same day, one by the appellant that the clerk of this Court be ordered and directed or permitted to issue a writ of *fieri facias* by way of execution on said judgment, and the other by the city that said docket entry of judgment be stricken out.

"The questions argued before me are whether any judgment should have been entered in the case, and, if it should, what is the proper form of judgment, and whether such judgment can be enforced against the city by any process? The question whether such process should be a writ of *fieri facias* or a writ of mandamus, was not argued, but was left for future determination if it should become necessary. The questions which have been raised are of great importance and involve the rights not only of the parties to this particular case, but the rights of the parties

in all the other similar cases. The Act of Assembly of 1870, ch. 115, authorized the Mayor and City Council of Baltimore to provide for the improvement of Jones' Falls within the limits of the City of Baltimore, giving the corporation power to acquire all property which *in its judgment* might be *advisable for the purposes,* and to provide for ascertaining the value of such property, and also to ascertain the *damages* which might be caused by the improvement, to owners of property, for which they ought to be compensated, and also the *benefits* to owners of property for which they ought to pay a compensation.

"The Act further authorized the corporation to assess and levy on the whole assessable property of the city or specially on the property of persons benefited, the whole or any part of the amount of damages and expenses, and also to provide for appeals from the decisions of the Commissioners to this Court, with the further provision that every owner should have the right ' to have decided by a jury trial the *true value* of the property *proposed* to be *acquired,*' 'and whether any and what damage will be caused, or any and what *benefit* will accrue to the owner or possessor of the property so assessed for damages and benefits respectively; and further to provide for collecting and paying over the amount of compensation adjudged to each person entitled, or investing it in stock of the corporation,' for him, 'and to provide for the collection by sale of the property assessed, or otherwise, of all sums assessed as benefits aforesaid.' By the 7th section of the Act, the Ordinance of the city previously passed, approved Jany. 31st, 1870, was made valid. The Ordinance contains twenty-three sections, and fully provides for and regulates the whole course of proceeding. In making estimates of the damages sustained by the owners of property, the Commissioners are required to take into consideration the *benefits,* if any, which will accrue to the owners of *such property,* but no benefits are charged to any other persons, so that

the actual expenses of the improvement are required to be borne by the city generally.

"Section 20, provides that any person interested in and dissatisfied with the assessment of damages may appeal to this Court, and shall have the right to a trial by jury, and this Court is directed not to set aside the proceedings of the Commissioners for any defect or omission, but to amend or supply all such defects and omissions, and increase or reduce the amount of *damages assessed* and correct the said return of proceedings, and to cause the proceedings and decisions on said return, and appeals to be entered in the book containing the record of the proceedings of the Commissioners certified by the clerk under the seal of the Court, and the book to be transmitted to the Register of the city, *which shall be final and conclusive in every part.* The Ordinance does not in terms direct that the inquisition found by the jury shall be confirmed by the Court, or that any judgment shall be entered thereon, and if any power to do either exists, it can only be derived from inference from the language of the Ordinance, or from the provision of the Act of Assembly, or from established practice in similar cases.

"Section 21, provides that if no appeal is taken, the assessment and ascertainment of damages by the Commissioners is *conclusive* upon all parties, and further enacts that upon the *payment* or *tender* of *payment* to the parties respectively entitled to receive the same, of the sum of money so ascertained by the said Board of Commissioners, by the said Baltimore City Court, in case of an appeal prosecuted under the provisions of this Ordinance, to be the value of the property designated in the aforesaid statements as necessary to be acquired by the Mayor and City Council of Baltimore, in construction of the works connected with the improvement of Jones' Falls hereinbefore mentioned, or upon the investment thereof in the city five per cent. stock, the said property shall become to all in-

tents and purposes, the property of the said Mayor and City Council of Baltimore, for the purpose aforesaid.

"It will be seen then, that by the Act of Assembly, and the Ordinance above referred to, full power is given to the city to acquire such property within its limits, as *in its judgment* may be *advisable* for the improvement of Jones' Falls and also to *ascertain the value* of such property. The latter is to be accomplished by means of a Board of Commissioners appointed by the city, but any person dissatisfied with the assessment, may appeal to this Court where he is entitled to a trial by a jury, and the value so ascertained by the Commissioners if not appealed from, or by proceedings in this Court in case of appeal, is *equally conclusive* upon all parties. But until the money is actually paid or tendered to the parties, or invested for them in city stock, the title does not become vested in the city. The ascertainment of the value is merely a preliminary proceeding. The vesting of the title depends on the payment or tender of the money, or the investment of the money in city stock, which is meant to be an equivalent thereto, and until that is done, the owners remain in the enjoyment and control of their property, and the city has no right to take possession. If it had been the intention of the Act or of the Ordinance, that payment should be made at any fixed period, they ought to have so declared, but instead of so doing, they allow the city to fix its own time, by authorizing it to provide for collecting and paying over the amount, and by providing that upon payment or tender by the city, the title is to vest in it.

"It has been forcibly urged on the part of the appellant, that to give this privilege to the city, might cause great damage to the owners, because until the property is actually taken, they are prevented by the uncertainty of their tenure from making profitable use or disposition of it, and because the value of the property might change and be largely enhanced before the city might choose to

take it at the prices previously fixed. But the reply to these considerations is, that the law must be interpreted as it stands, according to its true intent and meaning, and that it cannot be construed by the Court so as to obviate the real or supposed hardship which may arise in particular cases; and still further that the construction contended for by the appellant, might inflict even greater injury than it would prevent.

"The city was by the said Act of 1870, chapter 115, authorized to acquire all property, which in its judgment might be advisable for the purpose in view, but until the value of the property was ascertained according to law, it was impossible for it to exercise a sound judgment on the subject. It might be advisable for the city to purchase the property if it could be obtained for a certain price, and very unadvisable if that price was greatly exceeded. It was estimated that the cost of the entire improvement would not exceed two million five hundred thousand dollars, and the city by the Act of 1870, ch. 113, was authorized to issue its bonds for that amount, but the assessments by the Commissioners of the property to be taken alone amounted to $2,027,815.71, and have been increased by the amount of $43,639, by the appeals, and it was then estimated that the additional sum of $1,500,000 would be required in order to complete the improvement.

"The discretion of either making or declining the purchase, the Act and the Ordinance intended that the city should exercise with a view to the public good, and it has in fact exercised it by repealing the Ordinance while the motions in this case were under argument. The city has thus refused to take the property of the appellant. Can it be compelled to pay for it by any process issued in this case from this Court?

"The question is not a new one in this State, but has, I think, been substantially settled in three cases, one decided by the Supreme Court of the U. S., and two by the Court of Appeals of Maryland.

"The first was that of the *Balto. & Susq. R. R. Co. vs. Nesbit*, 10 *How.*, 395, decided in 1850. In that case, certain land of Nesbit in Baltimore County was, under the charter of the Company, condemned by the inquisition of a jury for the purposes of the road, and the inquisition was duly confirmed by the Court. This condemnation and confirmation fixed the value of the land. The charter provided, as in this case, that when the valuation so made was paid or tendered to the owner the title of the property should vest in the Company, but the amount was not tendered for upwards of seven years.

"In the meantime in about four years from the date of the confirmation, the inquisition was set aside by the Court under the authority of a special Act of Assembly, and a new inquisition was ordered by the Court under the same Act. The case was then taken by writ of error to the Supreme Court, which decided that no title vested in the Company under the inquisition and confirmation, because the Company had neither *paid nor tendered* payment of the assessed value.

"The Court say in its opinion: 'It can hardly be questioned, that without acceptance by the acts, and in the mode prescribed, the Company were not bound; that if they had been dissatisfied with the estimate placed upon the land, or could have procured a more eligible site for the location of their road, they would have been at liberty before such acceptance wholly to renounce the inquisition. The proprietors of the land could have no authority to coerce the Company into its adoption.' The Court thus held that although the value of the land had been established by the inquisition and the confirmation thereof, the Company had the right to refuse to take it, because no title vested until the Company chose to pay the price.

"In the case of *Graff vs. The Mayor and City Council of Baltimore*, decided by the Court of Appeals in 1857, 10 *Md.*, 544, it appeared that the city by virtue of an Act

passed for supplying it with pure water, proceeded to condemn certain land in Baltimore county. The inquisition of the jury was returned to the proper Court, and by it confirmed, but before the final confirmation, the city repealed the Ordinance which it had passed on the subject and refused to take the property. The Act of Assembly contained a clause that the title to the property, was to vest in the city on *payment* or *tender* by it of the assessed value. The Court of Appeals decided that the above mentioned decision of the Supreme Court, was conclusive of the case; quoted with approval, the language above cited from that decision and added: ' Now, if the title does not vest in the city until payment or tender, and the owner could compel payment by legal process, there would be no mutuality. The city might be required to pay for land that it may never use or need for the purposes of the Act. This certainly would be a hardship on the citizens of Baltimore, from which, we think, they should be relieved by adopting the interpretation of the Supreme Court in the case cited.'

" The case of *The State vs Graves*, 19 *Md.*, 351, arose out of the condemnation of land for opening Holliday street. After the lot in question had been assessed by the Commissioners, an appeal was taken to the Criminal Court (which then had jurisdiction of such appeals) where there was an inquisition of the jury which was confirmed by the Court, and subsequently the city repealed the Ordinance. The Court of Appeals relying on the decisions above referred to decided that ' the dedication of private property to public use is not complete until the proprietor is *paid* or *tendered* the value of his property, as ascertained by the inquest or assessment. No preliminary step prior to actual payment or tender, so fixes the corporation as to prevent an abandonment of the condemnation or of the enterprise.'

" These decisions are, I think, conclusive that the inquisition of the jury and the proceedings of the Court in this

case settled only the value of the property, and that as the city neither tendered nor paid the price, it did not accept the property, and the title did not vest in it, and that the city has, by a repeal of the Ordinance, put an end to the entire proceedings.

"It is contended, however, that the provisions contained in the Ordinance that 'the proceedings and decisions of this Court, when certified to the Register, shall be final and conclusive in every respect,' gave to this Court the power, and made it its duty, to enter such a judgment on the inquisition as would absolutely bind the city to pay the price of the property. But I understand this provision to refer only to the *proceedings and decisions* of this Court in the determination of the *value of the property* which was the question before it, and not in any way to relate to, or affect the right of the city subsequently to accept the property by paying or tendering the price, or to put an end to the proceedings by repealing the Ordinance, which are matters over which this Court has no control; and I am confirmed in this opinion by the decision of the Court of Appeals in the Holliday Street case above referred to, because the Ordinance under which that street was opened contained a *similar provision*. In that case it appears that the Criminal Court had entered a judgment of confirmation of the inquisition of the jury, but neither the Court of Appeals nor the counsel in that case relied on that provision, as in any degree impairing the right of the city to refuse to accept and pay for the property or its right to repeal the Ordinance.

"I have been referred to decisions both in Massachusetts and Pennsylvania, on statutes of those States in which it was held that the inquisition of juries condemning land in one case for a railroad, and in the other for a turnpike company, after the inquisitions were confirmed by the proper Court, became absolutely binding on the companies, but those statutes did not give to those companies the right

conferred by the statutes of this State on the parties asking for condemnation, to accept or reject the property after condemnation, and the decisions in those States therefore are not applicable to the case now before me. And in the case in Pennsylvania, of *Hampton vs. Commonwealth,* 19 *Penn.,* 329, where an Act was passed authorizing the extension of a street in Pittsburg, and providing for an assessment of damages on lots in the vicinity, it was held after the *damages were assessed* and the report was *confirmed,* but where before proceedings were instituted to recover damages, the Act was repealed, that the repealing Act put an end to opening the street and rendered void all proceedings under it, and that the parties in whose favor damages had been assessed could not recover.

"But it is further contended that the Act of Assembly passed in 1870, ch. 371, which adds an additional section to the Code of Public General Laws, Article 29, entitled ' Courts,' applies to this case.

"That Act provides that ' in all cases of proceedings to condemn lands, for any purpose whatever, under any law or charter, upon the return and ratification of the inquisition by the proper Court, and in all cases in which inquisitions may have been heretofore returned and ratified, the said Court shall render a judgment against the persons or corporation for whose use the condemnation may be so made, in favor of the owners named in the inquisition, for the amount of the damages awarded by the jury, and unless within ninety days after condemnation ratified, the same shall be abandoned by written notification to said owners, execution may immediately thereafter issue on said judgment, as in other cases of judgments rendered in Courts of law.'

"The Act clearly implies, that in proceedings to condemn land, the *return* and *ratification* of the inquisition by the proper Court do not constitute a judgment on which an execution can issue, but it provides that on such return

and ratification the Court shall render a judgment against the persons or corporation for whose use the condemnation may be made, in favor of the owners named in the inquisition, for the amount of damages awarded by the jury, and it gives ninety days after ratification in which the property may be abandoned, before execution can issue. Now to what class of cases does the Act apply? To those certainly which are provided for by the Act of 1868, ch. 471, sections 170 to 175 inclusive, that is, to cases where corporations are authorized to acquire land, &c., by condemnation.

"The sheriff in these cases is directed to summon a jury, which is to value the property and reduce its inquisition to writing, and the sheriff is then to return the inquisition to .the proper Court for its ratification, and the title is to vest in the corporation on the payment or tender of the price. And the Act of 1870, ch. 371, also applies to all other cases of condemnation under any special Act, where there is an inquisition of a jury which is required to be returned to Court for confirmation. But the Act of 1870, ch. 115, authorizing the improvement of Jones' Falls, and the City Ordinance which was passed for the same purpose, and is made valid by the same Act, establish an entirely different system. The valuation is not directed to be made by a jury, and therefore there is no inquisition which could be returned to this Court, or to any Court, for ratification, but the valuation is required to be made by a Board of Commissioners, and is conclusive on all parties except those, who considering themselves aggrieved by the action of the Board, appealed to this Court within the time limited.

"The case of the appellant was therefore not returned to this Court for ratification, but was brought here by his own appeal for the purpose of reviewing and correcting the valuation made by the Commissioners This was the object of his appeal as stated in his petition; on the

appeal he was entitled to a jury trial, or, at his option, he could have submitted the case to the Court. He elected to have a jury trial. The jury, it is true, returned its inquisition to this Court, as it was bound to do, for the inquisition or finding of a jury must be returned somewhere, and as the trial was held under the Court's direction, there was no other tribunal to which it could be returned, but the inquisition was not returned for the purpose of ratification within the meaning of the Act of 1870, ch. 371, it was returned to this Court as the tribunal having jurisdiction of the appeal, and was valid whether it was ratified or not, unless it was actually set aside by the Court. There is no provision in the Act of Assembly or in the Ordinance of the city which requires such a ratification, in order to make the inquisition valid.

" Again, the Act of 1870, ch. 371, applies only to cases where the inquisition of a jury is returned to Court, and is ratified by it; but of the numerous assessments made for the improvement of Jones' Falls, only a few were appealed to this Court, and of those appealed, only a portion were submitted to a jury, and the rest were left to the decision of the Court. If the contention of the appellant be sustained, the few cases which were in this Court submitted to a *jury,* have alone received such a judicial sanction, that under the Act of 1870, ch. 371, process can be issued on them against the city, while no such process can issue on the cases brought here by appeal, which were decided by the Court, or in the very numerous cases which were not appealed at all. I cannot think it possible that any such unreasonable and unjust discrimination was intended to be established by law among the different owners of condemned property, who are all entitled to equal consideration and to the same treatment.

" Three things are made necessary by the Act of 1870, ch. 371, in the cases to which it applies: first, a return of the inquisition; second, a ratification thereof by an order

of the Court; and third, a judgment against the person or. corporation for whose use the condemnation is made. If the judgment on the inquisition entered by the clerk in this case be allowed to stand, as it is in effect and meaning nothing more than a judgment of ratification of the inquisition, it is not such a judgment against the city as is contemplated by the Act, as being the proper basis of an execution, and as I think that the Act does not apply to this case, I shall not enter any further judgment therein; the judgment regarded as an order of ratification, is, I think proper in view of the sanction given to such a practice by the Court of Appeals in the parallel case of the *State vs. Graves*, 10 *Md.*, 351. In that case, the inquisition of the jury was *confirmed* by the Criminal Court, p. 355, and the Court of Appeals, p. 367, speaks of it as a *judgment of the Court*. From the language of the Act of 1870, ch. 371, and the nature of its provisions, I have come to the conclusion that it does not apply to this case; but there is another consideration which confirms me in this opinion, that is, it cannot do so unless by implication, it repeals the powers previously granted to the City, by the Act of 1870, ch. 115, in relation to Jones' Falls. Such an implication is not favored in law and should not be made unless it satisfactorily appears to have been the intention of the Legislature. On this point, I cite a passage from the able work of *Dillon on Municipal Corporations, 1st Vol.* 54: 'It is a principle of very extensive operation, that statutes of a general nature do not repeal, by implication, charters and special Acts passed for the benefit of particular municipalities, but they do so when it appears to have been the purpose of the Legislature. If both the general and special Acts can stand they will be construed accordingly. If one *must* give way, it will depend on the supposed intention of the law maker to be collected from the entire course of legislation, whether the charter is superseded by the general statute, or whether the special charter provi-

sions apply to the municipality, in exclusion of the general enactments.'

"And the Court of Appeals has emphatically declared that 'if laws and statutes seem contrary to one another, yet if by *interpretation* they may stand together, they shall stand, and when two laws only so far disagree or differ as that by any other construction they may both stand together, the latter is no repeal of the former.' *Mayor, &c., of Cumberland vs. Magruder,* 34 *Md.*, 381. Moreover, the Act of 1870, ch. 371, is part of the General Public Law, and the Act of 1870, ch. 115, which confers on the City its powers in reference to the improvement of Jones' Falls, is part of the Public Local Law. Both were passed at the same session, and the Code provides Art. 1, sec. 11, that 'where the General Public Law, and the Local Public Law of any county, city, town or district are in conflict, the Public Local Law shall prevail.' As I see no conflict between the two Acts, but am of opinion that they respectively refer to proceedings of an essentially different description, I do not think that the Act relating to Jones' Falls is altered by the later enactment.

"I accordingly dismiss the motion to strike out the judgment, because, although it might be more explicit in form, it is only a judgment of ratification, and such an order or judgment was I think, proper to be entered in the case, and I dismiss the motion for an execution against the city, for the reasons given."

On the 12th of March, 1875, by leave of the Court and consent of counsel, William M. Merrick, Esq., was substituted as administrator of Daniel Warfield, deceased, in the place of Henry M. Warfield.

After the filing of the answer, there were further pleadings by the respective parties, which need not be particularly set out.

On the 27th of March, 1875, the Court (BROWN, J.,) passed an order dismissing the petition for *mandamus.* From this order the present appeal was taken.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, GRASON and MILLER, J.

*James A. Buchanan* and *S. Teackle Wallis,* for the appellant.

Upon the pleadings and proofs in the case, the petitioner was entitled to the relief prayed, and the Court erred in dismissing his petition for a *mandamus.* Where it is sought to enforce the payment of a judgment against a municipal corporation, as in the case at bar, *mandamus* is the appropriate remedy. 2 *Dillon on Municipal Corp., page* 776, *section* 685, *and pp.* 777, 778, 779, 780 *and* 781, *sections* 686 *and* 688.

The docket entries in the case at bar, in the Court below, are fully sustained by the well settled practice in this and other States, and have all the force and effect of a decree in equity or a judgment at law. See *State, ex rel. of McClellan vs. Graves,* 19 *Md.,* 351, 354, 374.

In that case, this Court held that the proceedings of the Street Commissioners were a substitute for a jury of condemnation, and subject to like rules and regulations. And in the case of *Page vs. Mayor and City Council of Baltimore,* 34 *Md.,* 558, 560 *and* 568, this Court affirmed the judgment. *Hazelhurst vs. Mayor, &c., of Baltimore,* 37 *Md.,* 221.

The decisions of other States have treated the action of the Courts in condemnation cases as judgments giving substantial rights to persons whose property had been taken for public use. *Neal vs. Pitts. & Conn. R. R. Co.,* 31 *Pa. State Rep.,* 19 ; and 2 *Grant's Pa. Rep.,* 137, 138 ; *City of Philadelphia vs. Dickson, et al.,* 38 *Penn.,* 247, 250 ; *City of Philadelphia vs. Dyer,* 41 *Penn.,* 463, 468, 469, 470 ; *Commonweath vs. Pitts. & Conn. R. R. Co.,* 58 *Penn.,* 28, 49, 50 *and* 51 ; *Haley, et al. vs. City of Philadelphia,* 68 *Penn. Rep.,* 45, 46, 47 ; *Hawkins vs. Trustees of Rochester,* 1 *Wendell,* 53, 54 ; 2 *Dillon on*

*Municipal Corp.*, 473, 474, 475. And for a case directly in point, see the case of *Harrington vs. County Commissioners of Berkshire,* 22 *Pick.*, 263.

By Article 3, section 40 of the Constitution of Maryland of 1867, the rights of property are most amply protected. See *Moale vs. Mayor, &c. of Baltimore,* 5 *Md.*, 314, 321; 322; and the case of *Pumpelly vs. Green Bay Company,* 13 *Wallace*, 166, 174, where the Supreme Court of the U. S. in construing a provision of the Constitution of Wisconsin, similar to ours, gave a decision affording ample protection to the owner of private property.

The Acts of Assembly and Ordinances of the City of Baltimore, under which it was designed that the improvement of Jones' Falls should be made, do, when rightly construed, give the most ample protection to the rights of private property. See *Act of* 1870, *ch.* 115; *Ordinances of* 1870, *No.* 13, *approved January* 31st, 1870, *and* 1872, *approved April* 24th, 1872; *Potter's Dwarris on Statutes,* 378, 392.

When we contrast the language of these two Ordinances with that of the Act of 1853, ch. 376, it will appear the appellant has a much stronger case than Graff had in his case against the *Mayor, &c., of Baltimore,* 10 *Md.*, 544.

But if there be any doubt about the rights of the appellant independently of the Act of 1870, ch. 371, it is removed if his case comes within its provisions. Does it do so? In order to determine this, it is necessary to give the dates of certain Acts, and also to call the attention of this Court to the many Acts passed by the Legislature of 1870, touching the charters of railroads and other corporations.

The Jones' Falls Improvement Act of 1870, ch, 115, was approved March 23rd, 1870. The Act of 1870, ch. 371, was approved April 4th, 1870; and at the same session of the Legislature, the charters of the Baltimore and Potomac and the Metropolitan Railroads were extended;

and the "free Railroad Law" of 1870, ch. 476, (approved April 4th, 1870,) was passed.

Surely the Legislature of 1870, with all these corporation matters before it, must have had some object in using the very sweeping language of the Act of 1870, ch. 371. And that object was to give the owner of private property more ample security against the condemnation of his property than he had heretofore enjoyed, and thus to protect him against such outrages as this Court found itself powerless to redress under the law as it stood when the case of Graff, in 10 *Md.*, 544, was decided. If such was the intention of the Act of 1870, ch. 371, then it is a remedial statute, and is to be liberally construed. See *Potter's Dwarris on Statutes*, 73, 234, *citing New River Co. vs. Graves*, 2 *Vernon's Reports*, 431, *sections* 759 *and* 867 *of* 2 *Dillon on Corporations; State vs. Milburn*, 9 *Gill*, 105 ; *Charles Street Avenue Co. vs. Merryman*, 10 *Md.*, 536 ; *Frazier vs. Warfield*, 13 *Md.*, 279 ; *Parkinson vs. State*, 14 *Md.*, 184. The rule of construction warranted by the above cited cases clearly brings the case at bar within the provisions of the Act of 1870, ch. 371.

But the counsel for the appellees insist that whatever rights the appellant may have had under the Ordinances of 1870, approved January 31st, 1870, and 1872, approved April 24th, 1872, are of no avail now because said Ordinances have been repealed by the subsequent City Ordinance of 1874, No. 40. The answer to this is two fold :

1st. If the appellant's case is within the Act of 1870, ch. 371, then he had acquired a vested right to the award of $40,000 of which he could not be deprived by any Ordinance of the Mayor and City Council of Baltimore. *Abbott's Digest of the Law of Corporations, p.* 520, *sec.* 409 ; *Harrington vs. County Commissioners of Berkshire*, 22 *Pick.*, 263.

2nd. And that as under the Constitution of Maryland, it required the combined action of the Legislature of

Maryland, the Mayor and City Council of Baltimore, and a majority of the legal voters of the City of Baltimore, to give validity to the Ordinances for the improvement of Jones' Falls, (See *Constitution of Maryland of 1867, Article* 11, *sec.* 7); such Ordinances when so adopted cannot be repealed by the Mayor and City Council of Baltimore, and they are therefore still in full force and effect.

*I. Nevett Steele*, for the appellees.

The inquisition of the jury was like the estimate of the Commissioners, nothing more than an ascertainment of the value of the property, and the amount to be paid therefor, in case it should be taken. When it is proposed to take private property for public use, the party entitled has the right to insist that the value of it, or the just compensation for it, shall be ascertained, or awarded by a jury. When such an ascertainment is made, in the first instance, by a special Board, the owner may either abide by its valuation, or decline it, and appeal. But an appeal simply means that he claims the right to have the value of his property determined by a jury, instead of by the special Board. If he waives an appeal, the finding of the Commissioners fixes the value; if he takes it, then the jury fixes the value, but in either case the only act done is the ascertainment of the value. *Steuart vs. Mayor, &c. of Balto.*, 7 *Md.*, 500.

The intervention of Commissioners, or of a jury, is necessary only because it cannot be agreed upon between the parties what the terms of purchase ought to be. But the public cannot be compelled to take, simply because it uses the only means within its power, to ascertain what it will cost to take.

The power conferred on the city by the Act of 1870, was to provide for the "ascertainment of the value" of the property it might propose to acquire; and to provide for appeals from the decisions of the Commissioners ap-

pointed "to ascertain the value of the property" aforesaid ; and to secure to every owner the right "to have decided by a jury trial the true value of the property proposed to be acquired ;" and by the Ordinance the Commissioners were directed to ascertain "the value of all property necessary to be acquired or taken ;" and also to make a statement of such ascertainment, and return a transcript thereof to the Register, who was required to give notice that the persons entitled have a right of appeal "therefrom ;" and the Ordinance further provides that the appeal to be taken is an appeal to have the City Court "review" the said ascertainment of value, or "assessment of damages" made by the Commissioners ; and also, that when such ascertainment of value shall have become "final and conclusive" by the inquisition of a jury on appeal, (*Ord.* 1872, *sec.* 20,) or by the waiver of an appeal, (*sec.* 21,) then, upon payment, or tender of the amount, the property shall become the property of the Mayor and City Council.

No right vests in the owner to recover the amount fixed by the inquisition of the Commissioners ; or by the inquisition of the jury, upon the finding of the same. The inquisition of the one "is conclusive" of the value as soon as the proceedings on appeal are at an end, and the inquisition of the other is equally "conclusive" on the lapse of thirty days from the return without an appeal, but no "confirmation" is needed, or provided for, in the case of either. The act of confirmation by the Court, whether authorized or not, cannot make the estimates of value by a jury, any more "conclusive" than are the estimates of the Commissioners without an appeal, nor place the one class of cases in any better or worse position than the other. Nor does the "conclusive" ascertainment of the value of the property, vest any title, or right of possession in the Mayor and City Council. *B. & Susq. R. R. Co. vs. Nesbit,* 10 *How.,* 395 ; *Graff vs. Mayor, &c. of Balto.,* 10 *Md.,*

544 ; *State vs. Graves,* 19 *Md.,* 351 ; *Hampton vs. Commonwealth,* 19 *Penn.,* 329.

The Mayor and City Council had the power to repeal the Ordinances under which all the proceedings were had, and on such repeal all such proceedings became null and void. See same authorities.

The Baltimore City Court had no power or jurisdiction to enter a judgment of any character on the inquisition of the jury. Its jurisdiction in the premises was a special one, and the extent of it depended upon the Act of Assembly and the Ordinance. No jurisdiction to enter any judgment is conferred by either, but the provision is, that the Court "shall cause the proceedings and decisions on said return and appeals to be entered in the book containing the record of the proceedings of the Commissioners, certified by the clerk, under the seal of the Court, and the book to be transmitted to the Register of the city." sec. 20.

If the entry constitute a judgment of any kind, it must be taken to be such a judgment as the Court below declared it to be. While that Court declares that neither confirmation, nor judgment of confirmation, was necessary to make the inquisition valid; and that neither was provided for by the Act or Ordinance, it nevertheless allowed the entry, made "without authority or any instructions from the Court," to stand, because it was supposed that the Court of Appeals had sanctioned the practice and the use of the terms, by the language referred to in *The State vs. Graves.* The Court below, however, expressly declares it to be "only a judgment of ratification." The effect and construction of a judgment entered in pursuance of law are, of course, to be determined by the Courts ; but, it is submitted that when a Court makes, or allows to stand, the docket entry of a judgment that is not in pursuance of, or required by law, because it seems to be fit there should be some such entry, such a judgment, if it have any effect, cannot have any other than that which the Court expressly gives to it.

To make it mean one thing, when the Court declares that by it, it meant another, would be to work a very great wrong on the Court and on the defendant. In the case of an entry of such a character, the Court which makes it, should alone be heard to interpret it, otherwise the Court is made to do what it protests it never did, or intended to do.

If, therefore, it be "only a judgment of ratification," and null even as that, and the entry was not intended by the Court to give to the inquisition any other effect than it would have had without it; and if the entry was not intended by the Court to be the entry of such a judgment of confirmation as is provided for by the Act of 1870, ch. 371, nor any sort of a judgment that would sustain an execution, the appellant was not entitled to a *fieri facias*.

The Act of 1870, ch. 371, does not apply to condemnations under the Act and Ordinance in question.

BY THE COURT:—

In this case we think the motion made by the appellees, to strike out the judgment, entered upon the inquisition of the jury, ought to have prevailed. There is no authority conferred upon the Court to enter such judgment by the Acts of Assembly or Ordinances under which the proceedings were had; and the same being a special proceeding under the statutes, are governed entirely by the statutory provisions, which do not contemplate the entering of any judgment by the Court; but provide that the verdict of the jury shall be conclusive, and that the same with the other proceedings shall be certified to the City Register. The judgment having been entered inadvertently by the clerk, without authority, ought to have been stricken out. In the case of *The State vs. Graves*, 19 *Md.*, 351, where the proceedings were of the same kind, a judgment had been entered; but no notice was taken of that entry, either by the Court or counsel; nor was any question made or

discussed with regard to it.　That case cannot, therefore, be considered as any authority for the practice of entering a judgment in such cases.　No appeal, however, having been taken from the order of the Court below in this respect, the order stands unreversed.

Upon the main question presented by the appeal, which arises upon the order overruling the application for a *man-damus*, we concur in the views expressed by the Judge of the City Court, and for the reasons stated in his opinion sent up with the record, the order will be affirmed.

*Order affirmed.*

(Decided 24th June, 1875.)