(Decided 26th March, 1879.)

----

The Mayor and City Council of Baltimore *vs.* Albert Ritchie.

*Construction of Art. 12, sec. 3, of the Baltimore City Code of 1869—What constitutes a Case in Court.*

Professional services rendered to the appellant, by the appellee while city solicitor of the appellant, in the matter of proceedings on inquisitions for the condemnation of rights of property in Baltimore County taken by the appellant for the purposes of the Temporary Water Supply, came within the official duty of the appellee as city solicitor, as prescribed by Art. 12, sec. 3, of the Baltimore City Code of 1869.

Whenever the object of a proceeding on inquisition by a jury, authorized by statute and conducted under special authority, is to establish a fact *inter partes,* upon the finding of which the action of a Court is necessary to its validity, it is a judicial proceeding constituting a case in Court, within the meaning of the Article and section above cited.

Appeal from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, MILLER and ALVEY, J.

*Thomas W. Hall*, for the appellant.

The appellee claims that the condemnation proceedings or inquisitions before the Sheriff of Baltimore County and a jury, referred to in the agreed statement of facts, were not "cases in which the city is interested," which it is made his duty "to try," by sec. 3 of Art. 12 of the City Code. His contention is, that, technically speaking, they were not *cases in any Court* within the meaning of the ordinance.

Proceedings to authorize the taking of private property for public purposes by process of condemnation, in this State, are necessarily of a judicial nature. They are made so by the provision of the State Constitution, which says: "The General Assembly shall enact no law authorizing private property to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation." *Constitution, Art.* 3, sec. 40. Such proceedings, therefore, are neither executive nor legislative. *Cooley on Const. Lim.*, 563.

The Legislature itself cannot take or authorize the taking of private property, without tender or payment of compensation to the owner. That compensation the owner has a right to have assessed by a jury, duly summoned and qualified according to law, and proceeding in accordance with legal rules and principles. This principle of fundamental law, older than Magna Charta, is recognized throughout all the legislation of this State.

The inquisitions in this case were had in pursuance of powers of condemnation vested by law for a public purpose in the Mayor and City Council of Baltimore. The whole form of proceeding is strictly regulated and prescribed by the statute. (See *Public Local Laws, Art.* 4, secs. 928 *to* 938.)

The whole proceeding is not only strictly judicial in its nature, but answers literally to the description in the ordinance of a "case in Court."

It is not two proceedings, as the appellee seems to imagine—one begun and ended before the sheriff, and another before the Court—but one continuous proceeding, subject, in all its stages, to review by the Court, depending for its efficiency upon confirmation by the Court, and required to be recorded in the Court.

The exercise of the right of eminent domain, itself one of the highest attributes of sovereignty, is essentially a judicial proceeding; that it is a "suit" or "case in Court," in the meaning of the common law and of the statute, has been decided by the Supreme Court of the United States, in reference to the Judiciary Act of 1789. *Kold vs. United States,* 1 *Otto,* (91 *United States Reports,*) 367–375.

The Supreme Court say, adopting Chief Justice MARSHALL's definition of a "suit" in *Weston vs. Charleston,* 2 *Peters,* 46: "If a proceeding to take land by condemnation may be a suit at common law, jurisdiction of it is vested in the Circuit Court. That it is a 'suit' admits of no question." *Kold vs. United States, ubi supra.*

Hence, in a case where the validity of proceedings to condemn a site for a post office and custom house in the City of Cincinnati, instituted by the Secretary of the Treasury by virtue of a simple clause in an appropriation bill, was called in question upon the ground that Congress had prescribed no mode of condemnation, it was held that jurisdiction of such proceedings was vested in the Circuit Court of the United States, by the general grant in the Judiciary Act of 1789 of power to entertain "all suits of a civil nature at common law, or in equity." 1 *Otto,* 367–375; 4 *Ohio St.,* 177, 179.

It is submitted that the preparation and trial of inquisitions for the condemnation of land or water-rights, in behalf of the Mayor and City Council, clearly fall within the provision of the ordinance which makes it the duty of

the City Solicitor " to try all cases in which the city is interested in any of the Courts of the City of Baltimore, except the Superior Court, *and in all other Courts in the State of Maryland,* except those mentioned in the preceding section." There is no pretence that the Circuit Court for Baltimore County is one of the excepted Courts, or that it is not the duty of the City Solicitor to "try all cases in which the city is interested" in that Court. Proceedings for the condemnation of land or water-rights in Baltimore County, instituted by the city, under the authority of the statute cited, fall within this category.

By the first clause of the third section of Article 12 of the City Code, it is declared that the "solicitor shall be the attorney of the Mayor and City Council of Baltimore." Can it be gravely doubted that the preparation of and attention to the statutory proceedings required for the condemnation of land or water-rights in Baltimore County, for the purposes of the city's water supply, come within the legitimate scope and sphere of an "attorney's" duties? They involve appearance by attorney. How else is a corporation like the Mayor and City Council of Baltimore to appear and act? How else can it avail itself of the power of condemnation, or set in motion the legal and judicial machinery of condemnation provided by the statute? That the conduct of such proceedings at every stage requires the services and skill of counsel learned in the law, is a matter of practice familiar to the Court. Being proceedings contrary to common right, of statutory origin, and *strictissimi juris,* on the part of the city, the need for such professional advice and aid on its behalf is especially urgent. *Taylor vs. Mayor and City Council,* 45 *Md.,* 576; *cf. Kane vs. Mayor and City Council,* 15 *Md.,* 240.

*Albert Ritchie* and *Orville Horwitz,* for the appellee.

The question in this case is: were the inquisition proceedings mentioned in the agreed statement of facts *the*

*trial of cases in Court,* within the contemplation of Art. 12, sec. 3, of the City Code?

It is submitted that they were not " cases " at all, nor were they proceedings *in Court.* An inquisition to ascertain the value of a parcel of land is no more a " case in Court" than is an inquisition before the coroner to ascertain the cause of death. A " case " means a suit or action; and to "try cases" means the trial of suits or actions; and the context shows that the services required of the solicitor *outside the city,* are such services only as are rendered in the *recognized Courts of the State.* The city may, at times, need other professional services in the different counties, just as it may need them in other States, but in neither case has it imposed the duty of performing them on any one of its law officers.

A " case" means a "suit." 2 *Murphy,* 320.

Bouvier defines " case" viz: " a contested question before a Court of Justice; a suit or action; a cause."

An inquisition is, of course, nothing but an inquiry, differing somewhat in the form of procedure, according to the subject-matter of inquiry; but still, only an inquiry, not the trial of any issue; and, when looking to condemnation, an inquiry merely as to the value of the land. When an inquisition is had for the purpose of awarding "just compensation" for property taken, it may be made by any tribunal, or in any form the State may direct; it may be by boards, or by commissioners, or by a jury of twelve, or any other number; and the constitutional guarantee of a "jury trial" is held to have no application, on the very ground that the proceeding is not a suit or an action, and involves no issue; and is *not a proceeding in a Court of justice.* *Livingston vs. Mayor, &c.,* 8 *Wend.,* 85; *Beckman vs. R. R. Co.,* 3 *Paige,* 75; *Angell on Highways,* sec. 102.

In Maryland, the inquisition is made by a jury of twelve, though in some instances, *e. g.,* opening of streets

in Baltimore city, it is made, in the first instance, by boards, with the right of appeal to the City. Court.

The whole proceedings in the case of the inquisitions in question are set forth in the Code of Public Local Laws, Art. 4, sec. 928 to sec. 941, and follow the well known mode of procedure in land inquisitions generally in this State, viz: application is made to a justice of the peace; he issues his warrant to the sheriff; the sheriff summons a jury to meet on the premises which are "to be valued," sec. 930; the jury then view the premises, and adjourn generally to some tavern, where they hear witnesses, and make up their inquisition; when the inquisition *is finished,* reduced to writing, signed and sealed, the sheriff returns it to the clerk of the county. This embraces everything done on an inquisition. It may be subsequently ratified or set aside by the Circuit Court, but as far as the inquisition is concerned, *it is completed* when delivered by the jury to the sheriff; and any subsequent proceedings are merely proceedings based on a concluded and completed inquisition.

The inquisition is nothing but an appraisal of the property; an inquiry into its value; the means of ascertaining the price to be paid for it. Sec. 932, Art. 4, defines its character by the duty it imposes on the jury, viz:

"The jurors so remaining shall inquire into, assess, and ascertain the sum or sums of money to be paid by the said M. & C. C. of Baltimore for the land," &c., "which they may deem necessary to purchase and hold or use for the purpose aforesaid." *Graff vs. M. & C. C.,* 10 *Md.,* 544; *Merrick, Adm'r of Warfield vs. M. & C. C.,* 43 *Md.,* 219; *Norris vs. M. & C. C.,* 44 *Md.,* 598; *B. & S. R. R. vs. Nesbit,* 10 *How.,* 395.

Judge Brown, in *Warfield's Case,* (43 *Md.,* 229–230, *supra,*) approved by the Court of Appeals, holds that an inquisition is merely a preliminary proceeding for the ascertainment of the value of the property, so that [the

city] when the price is fixed, may determine whether it will buy or not at such price.

A condemnation (when completed by payment, and taking the property) is substantially a purchase; and the only question for the jury is, what is the value of the land? *Archer's Case*, 9 *G. & J.*, 528–9; *Cooley on Constl. Lim.*, *sec.* 559, *n.* 4.

The inquisition before the jury is a "mere collateral question of damages, in which no suit is pending." *Pierce on R. R.*, 166, and authorities.

"The only question is the amount" which may be submitted to any impartial tribunal. *Bonaparte vs. C. & A. R. R.*, 1 *Baldwin C. C.*, 222.

The inquisition is only "a process for ascertaining damages where no suit is pending;" and therefore the guarantee of "jury trial" does not apply. *Ibid.*, 222.

The proceeding "is neither a suit at common law, or the trial of a right in a Court of common law jurisdiction." *Ibid.*, 222.

The case of *Taylor vs. M. & C. C.*, 45 *Md.*, 576, also shows that the inquisition is merely an inquiry for the purpose of ascertaining the amount to be paid for the land. This case was an appeal *in the matter of exceptions* to an inquisition taken and returned on the line of the "Permanent Water Supply," and the proceedings, on inquisition, were under the same law, and similar to those here considered.

Looking further at the Local Laws, it is seen that when the inquisition *is finished*, it is returned to the Clerk of the Circuit Court of the county, to be filed in his office, and after confirmation at the next term of Court, it is to be recorded as an evidence of title; but it is plain that it does not go even to the *clerk's office* until *it is done*, any more than a deed goes to the clerk's office for record before its execution was complete. The services *of counsel on inquisition* (the services here sued for) are then as completely

rendered and at an end, as are the services of the con-
veyancer when the deed is sent to be recorded.

If there are no exceptions filed, the Court, at its next
term, signs a formal order of ratification; if there are, the
Court examines to see whether the inquisition is *properly
made;* but whether rightly or wrongly done, the inquisition
*is finished,* and the *office of the jury discharged,* when the
Court takes it up.   The inquisition certainly could not be
called a "case in Court," when the Court has never had
anything to do with it, and when it has not even reached
the clerk's office.   The Court has no power whatever over
the inquisition, except to confirm or set aside.   The jury
has become *functus officio,* and the jurors were not officers
of the Circuit Court.

"The jury is, in this case, (Archer's), *functus officio,*
and the members composing it, *not having been our officers,
or under our control,* we cannot correct their act."   9 *G. &
J.,* 519.

In the inquisitions in question, all the labor was per-
formed before the juries, and the only knowledge the Court
had of them, and the only thing it had to do with them
was, after they had laid in the clerk's office until the next
term, to sign orders of confirmation, a matter requiring
the attendance of counsel for about five minutes.

So far from the proceedings on inquisition being "a case
in Court," the Court would not have even the power to
affirm or set aside the inquisition, were it not specially
confirmed.   *R. R. vs. Condon,* 8 *G. & J.,* 443.

Had exceptions been filed to the inquisitions in question,
it might have been argued that *those exceptions* constituted
a "case in Court," and it may or may not have been the
solicitor's duty to argue them.   It would seem, however,
from the names of the counsel who argued *Taylor's Case* in
the Court of Appeals (45 *Md., supra,*) on behalf of the
city, that the late City Counsellor and City Solicitor did
not regard it as the official duty of either of them to

argue even *the exceptions* filed to inquisitions taken outside the city, much less to act as counsel on the inquisitions.

The requirement that the inquisition shall be returned to the Clerk's office, to be submitted to the Court, &c., shows that the proceedings taken could not have been proceedings "in Court." It is because they are not proceedings of or in the Court, that the law provides that it shall be determined by a Court, whether the inquisition has been correctly taken or not. Moreover, after all services have been rendered, the whole proceedings may be brought to naught by notice of abandonment to the owner.

Bowie, J., delivered the opinion of the Court.

The subject of this appeal is a suit brought by the appellee against the appellant, for services rendered by the plaintiff for the defendant, at its request, and for money received by the defendant for the use of the plaintiff.

The case was submitted to the Court below without a jury, on the following agreement, viz: "This suit is brought to recover $100, with interest from June 25th, 1874, and $1400, with interest from July 22nd, 1875, for services rendered defendant by plaintiff, in the matter of fifteen inquisitions taken before the Sheriff of Baltimore County, in condemnation proceedings in said county, at Lake Roland, and on the 'Temporary Supply' line; that at the time said services were rendered, plaintiff held the office of City Solicitor; that all Ordinances and Acts of Assembly relating to the subject, are to be taken as in evidence, and may be read from the printed volumes; all errors in pleading waived, and the question submitted is whether or not such services as were rendered, were within the official duties of the plaintiff, under Art. 12, sec. 3 of the Baltimore City Code of 1869, and it is agreed that if the Court shall be of opinion that it was not the official duty of the plaintiff, under said Article and section, to per-

16         v. 51.

form such services, judgment shall be entered for the plain-
tiff for the amount claimed, otherwise for defendant, the
Court being at liberty to draw such inferences of fact from
the facts stated, as a jury might draw."

At the trial the cause being submitted to the Court
without a jury, and upon the statement of facts agreed
upon by counsel and filed in the cause, the appellee
offered the following prayer:

"On the facts stated and agreement of counsel, the
plaintiff prays the Court to find for the plaintiff." To the
granting of which prayer the defendant excepted, and the
verdict and judgment being entered for plaintiff, the defen-
dant appealed. The nature of the services rendered in
the statement of facts, is not set forth, and but for the
liberty given the Court in the concluding sentence, "to
draw such inferences of fact from the facts stated, as a
jury might draw," it might be questionable whether there
would be any evidence in the case upon which the prayer
could be founded or the verdict rendered.

Assuming that the services rendered were legal services,
such as a person occupying the office of City Solicitor,
might be expected or required to render, if they were within
the scope of his official duty, the question submitted to us,
is, in the terms of the agreement, "whether or not such
services as were rendered, were within the official duties of
the appellee, under Art. 12, sec. 3, of the Baltimore City
Code of 1869."

The section referred to provides:

"The Solicitor shall be the attorney of the Mayor and
City Council of Baltimore, and it shall be the duty of the
Solicitor to try all cases in which the city is interested, in
any of the Courts of the City of Baltimore, except the
Superior Court, and *in all other Courts* of the State of
Maryland, except those mentioned in the preceding sec-
tion, (the Court of Appeals and United States Courts
sitting in Maryland,) and act as junior counsel to the

counsellor, in any Court in which his services may be required."

This Article of the Baltimore City Code is to be interpreted as all other statute laws; the words are to be construed in their popular sense, according to the subject-matter.

The plaintiff appears to have been one of a class of legal officers, counsellor and solicitor, etc., whose duties were generally defined in the Article or Ordinance providing for their appointment.

The scope of these duties, must in a great measure depend upon the nature of the office, the powers and duties of the government creating it, as well as the language of the law by which it is created.

The relations of the City of Baltimore are not circumscribed by its corporate limits. Its municipal powers invest it with rights beyond those limits necessary to be exercised for the benefit of the community embraced within its bounds. Among these rights and duties, the exercise of which is of vital, primary importance, is the supplying the city with water, for the use of said city, and for the health and convenience of the inhabitants. The Mayor and City Council are therefore invested with all the rights and powers necessary for the introduction of water into the city, and to enact and pass all ordinances, from time to time, which shall be deemed necessary and proper, to exercise the powers and effect the objects specified. *See Code of Pub. Loc. Laws, Tit. City of Baltimore.*

These powers are only to be exercised by purchase or agreement between the Mayor, etc., and the proprietors of the land and water required, or by the process of condemnation by inquisition of a jury, as prescribed by the laws enacted for that purpose; a strictly legal form of proceeding, recognized and established by our laws and Courts.

Inquisitions, as is well known, are commenced by warrant issued by a justice of the peace, to the sheriff of the

county, who is required to summon the jurors, notify the proprietors, swear the jurors and witnesses. The Code of Pub. Local Laws enacts: "The jury shall reduce their inquisition to writing, and shall sign and seal the same, and it shall then be returned by the sheriff to the clerk of the Circuit Court of said county, and be by such clerk filed in his office, and shall be confirmed by said Court at its next session, if no sufficient cause to the contrary be shown, and when confirmed, shall be recorded by the said clerk at the expense of the Mayor and City Council of Baltimore. If not confirmed, the said Court may direct another inquisition in the manner above described." *Pub. Local Laws, City of Balto.,* secs. 928 *to* 940.

Proceedings like these cannot be initiated or conducted without the aid of an attorney and solicitor learned in the law.

They constitute a large proportion of the legal proceedings instituted in behalf of the Mayor and City Council, in discharge of their corporate duties and obligations.

Although they originate in warrant issued by a justice of the peace, they can only be consummated and concluded by the action of the Circuit Court of the county in which they originated.

Before that Court, all the questions involving the regularity and sufficiency of the process, the qualifications of the jurors, the *quantum* of damages, and the description of the property condemned, are reviewed, discussed and determined.

It is in fact, as in law, a case, cause or suit pending in the Circuit Court between the Mayor and City Council of Baltimore and the owners of the land, prosecuted for the procurement of a right according to the modes prescribed by law.

The inquisition is in the nature of proceedings *in rem,* instituted to acquire by virtue of express statute, private property for public use. Yet it is not the less a suit be-

cause the State or a corporation is the actor on the one side and the owners are defendants on the other. It has all the essential features of a suit at law, parties, process, witnesses, counsel, Court and final judgment.

Philologically, a case in Court is a suit in Court. Suits are remedies by which wrongs are redressed or rights recovered.

The proceeding by inquisition and condemnation is a remedy or instrumentality prescribed by law for the exercise of the right of eminent domain, wherein the State or the corporation is the suitor and the citizen or owner the defendant.

It may be conceded for the sake of the argument, that all inquisitions are not suits, yet inquisitions in which the interests of owners in land, or running streams are condemned for the use of the public, cannot under our Constitution and laws be consummated without the judgment of a Court of record.

All the proceedings prior to the final order of the Court are ancillary and preliminary thereto.

One of the most frequent and ordinary forms of suit, that by attachment on warrant, originates before justices of the peace. If the city of Baltimore had any causes of that kind in which the property to be attached lies beyond the limits of the city and in the State of Maryland, such suits must originate by warrant before a justice of the peace and be ultimately tried and concluded in the Circuit Court if the amount involved was within the jurisdiction of such Courts. No doubt can be entertained that such cases would be within the official duty of the solicitor under Art. 12, sec. 3.

An inquisition, merely taken and subscribed by the jury and sheriff and filed in the Clerk's office of a Circuit Court, is *in fieri,* unfinished, incomplete and of no value to the appellant in cases conducted under the provisions of the Pub. Local Laws before cited. They might or might not be confirmed.

The question now before us was not considered or discussed in any of the cases cited by the appellee. The general language used by the Court in the case of *Graff vs. The Mayor & C. C. of Balto.*, 10 *Md.*, 544, and in *Merrick, Adm'r of Warfield, vs. The Mayor & C. C. of Balto.*, 43 *Md.*, 219, and *Norris vs. The Mayor & C. C. of Balto.*, 44 *Md.*, 598, speaking of proceedings by inquisitions in those cases, (all of which were under other laws, than the proceedings now under consideration,) referred to other points, and it is entirely consistent with our present views.

In none of these cases was the question what constitutes a case in Court, the subject of consideration.

The effect of the proceedings on the rights of the parties, or whether they were suits at common law, was the inquiry.

There is no pretence that the proceedings on inquisition now before us are a common law suit, or the trial of a right in a Court of common law jurisdiction; they are expressly authorized by statute, conducted under special authority.

Wherever their object is to establish a fact, *inter partes*, upon which finding the action of the Court is necessary to its validity, it is a judicial proceeding, constituting a case in Court coming within the official duty of the solicitor of the appellant as prescribed by Art. 12, sec. 3.

It results from these premises that the judgment below must be reversed.

*Judgment reversed.*

(Decided 26th March, 1879.)