# GEORGE A. COX, W. ERNEST COX, SUSIE E. COX AND EFFIE K. COX

*vs.*

## GEO. W. BENNETT ET AL.

*Oyster Law: Code of 1912, Article 72. Board of Shell Fish
Commissioners: survey of—; review by Circuit Courts;
no appeal. Sufficiency of petition. Fraud. Attor-
neys-at-law: presumptions as to—. Juris-
diction of courts.*

A court of equity is always open when a charge of fraud is
raised.                                                        p. 361

Sections 93 and 94 of Article 72 of the Code of Public Gen-
eral Laws (1912), in conferring jurisdiction upon the Circuit
Courts, upon petition, to hear testimony and decide whether
oyster beds, or barren bottoms have been excluded or included,
in the survey made by the Board of Shell Fish Commissioners,
makes the decision of such courts final; and from such deci-
sions no appeal will lie to the Court of Appeals, except in cases
where the jurisdiction of the Circuit Court has been exceeded.
                                                              p. 361

For the Circuit Court to acquire jurisdiction under said sec-
tions of Article 72, it is not necessary that a plat be filed with
the petition, provided the beds or bars in question be desig-
nated as fully as required by the other alternative—by land-
marks, etc.                                                   . p. 362

It is a sufficient compliance with the statute if the signatures of the parties to such a petition be by attorney. p. 362

The presumption is that an attorney-at-law has the authority to act, and jurisdiction of a court to act may follow from the act of an attorney. p. 362

The amended plat referred to in section 94 need not be filed until after the finding by the Court, and failure so to file it does not vitiate the finding. p. 362

On an appeal from an order of the Circuit Court vacating an order passed under the provisions of sections 93 and 94 of Article 72 of the Code setting aside a survey made by the Shell Fish Commission, which order had been attacked on the ground that it had been obtained by fraud, it was *held*, that the fraud was not proved. p. 362

*Decided May 12th, 1914.*

Appeal from the Circuit Court for Somerset County. In Equity. (JONES, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Alonzo L. Miles* (with whom was *H. Fillmore Lankford* on the brief), for the appellants.

*James E. Ellegood* (with whom was *Harry L. Dashiell* on the brief), for the appellees.

CONSTABLE, J., delivered the opinion of the Court.

This appeal involves the validity of certain leases of oyster planting ground made by the Board of Shell Fish Commissioners to the appellants under the provisions of Article 72 of the Public General Laws of Maryland.

By said article the said board was authorized and directed to have made a survey of the natural oyster beds, bars and rocks of the State and to designate, upon charts, the limits and boundaries of the natural beds, bars and rocks, as established by the survey.

By section 93 of said article, Bagby's Code, it was provided that "if residents of any county exceeding twenty-four in number, shall, within four months after the filing of said survey and report in such county, file in the Circuit Court for said county a petition in writing attested by the oath of some one or more of the petitioners, alleging that five or more adjacent acres of oyster beds, bars or rocks, in said county, have been omitted from such survey, or that five or more acres of barren bottoms have been included in such survey, and designating the location of same by a plat, or as near as may be, with reasonable certainty by such landmarks as will locate and designate the beds alleged to have been omitted or included, a Judge of the Circuit Court for the said county, after due notice given to the Board of Shell Fish Commissioners, shall proceed to hear testimony and decide the case, as provided in the succeeding section."

The succeeding section, 94, provided that "upon hearing a case presented by petition under the preceding section, the judge shall determine the question whether the ground referred to in said petition is a natural bed or barren bottom, and his finding on said question shall be final and shall be entered upon the records of the Board of Shell Fish Commissioners in their office in the city of Annapolis, and properly marked on the copies of the plats as hereinbefore required."

Provision was therein made for the leasing of the barren bottoms for the purpose of oyster culture.

Within four months after the filing of the said survey in Somerset county, thirty-seven residents of that county filed a petition in the Circuit Court for that county attested by the oath of three of the petitioners, alleging, in substance, that the Board of Shell Fish Commissioners had on the 1st day of

July, 1908, filed in the office of the clerk of the Circuit Court for Somerset County the charts of the natural oyster beds in that county and the adjacent waters, and a written report of the survey made by it of the natural beds, bars and rocks, describing the same by courses and distances; that on one of the charts a large body of barren bottom, containing more than five acres of adjacent lands covered by water, had been included as a part of a natural bar, and describing said alleged barren bottom as "all that section of Carmol Bar as laid down on said Chart No. 7 and described in said report of survey which lies southeasterly of a straight line connecting a position six hundred yards northwest by west of Carmol Point, and a position five hundred yards west northwest of a point known to these petitioners and the general public as well as to the said Board of Shell Fish Commissioners as St. Pierre Point." And further alleged that no part of the section of Carmol Bar southeasterly of said straight line was a natural bed, bar or rock, but that that section was composed entirely of barren bottom.

The prayer of the petition was that that section of Carmol Bar might be declared to be barren bottom and be excluded from the said survey of natural bars.

The Board of Shell Fish Commissioners appeared, through its attorney, and filed an answer, admitting all of the allegations and admitting specifically that the section of Carmol Bar alleged to be barren bottom was in fact barren bottom; and consenting that an order be passed as prayed in the petition.

On the 5th day of August, 1908, the Circuit Court for Somerset County, "after hearing testimony," passed an order declaring that section of Carmol Bar, as described in the petition, to be barren bottom, and excluding it from the survey of natural oyster bars, beds and rocks.

In April, 1912, the appellants herein made application to the Board of Shell Fish Commissioners for leases to each of thirty acres of the land declared in the proceedings of 1908

to be barren bottom for the purpose of cultivating oysters. In May, 1912, leases were regularly granted to them each for a tract of thirty acres and for a period of twenty years.

On the 22nd day of November, 1912, the appellees filed a bill against the original petitioners and the Board of Shell Fish Commissioners, alleging in substance that they were residents of Somerset County and directly and indirectly interested in the oyster industry of said county, and in the security and protection of their common right of fishery in the waters thereof; that the tracts leased to the appellants were natural bars, beds and rocks; that the appellants applied for said leases well knowing they covered natural bars, but fraudulently pretended the bottoms applied for were barren; that by false and fraudulent representations the Court and Shell Fish Commissioners were imposed upon; that the petition was filed without the knowledge or consent of at least fourteen of the petitioners, none of whom signed the petition.

The prayers were that the order of 1908 be vacated; that the leases to the appellants be vacated and annulled and that the appellants be enjoined from obstructing the appellees and all residents of the county in the exercise of the privilege of catching oysters on said bars.

The Board of Shell Fish Commissioners answered setting up the proceedings under the petition and the leases made in pursuance thereof.

The appellants filed a plea of *res adjudicata* to so much of the bill as alleged that the lots of ground covered by the leases were natural bars, and an answer, under oath, supporting the plea and especially denying the fraud.

Answers were filed by twelve of the original petitioners, admitting that the bottoms, declared to be barren by the 1908 proceedings were natural bars and denying that they ever admitted, or intended to admit, that all of said bottoms were barren. Answers were filed by twenty-two of the original petitioners, denying that the petition was filed without their

knowledge and consent. It appears that in several instances the same defendant signed both classes of answers.

The appellees had the plea of the appellant set down for argument and the Court overruled the plea, with leave to file an amended answer.

We have no doubt but that this was a proper ruling. It will be noticed that the relief prayed in the bill did not embrace any prayer that the bars, declared in the proceedings of 1908 to be barren, should be determined to be natural bars, but that the order declaring them to be barren should be vacated, because procured through fraud. The effect, upon such relief being granted, would have been merely to set aside the original order and the leases made in pursuance thereof. It was not proper, therefore, to raise any defense they might have had under the proceedings of 1908 by a plea, thus presenting a question of law, but to have availed themselves of this defense by way of an answer. See *Miller's Equity,* sec. 147.

In our opinion the only question presented by the pleadings is whether the Court had jurisdiction to pass the order of 1908 and if so were the proceedings free from fraud. The Act conferring jurisdiction provided that the finding of the Court should be final, and, therefore, this Court would have no power to review the findings therein unless the lower Court exceeded its jurisdiction. Of course a Court of Equity is always open when a charge of fraud is raised, and all the more so, when it is charged that the Court itself has been imposed upon by false representations, but the question then presented is shall the act, the consequence of the fraud, stand. If the fraud is established of course there can be but one answer to that.

The appellees contend that the lower Court had not jurisdiction for three reasons: (1) Because the petition contained insufficient location; (2) because it was not signed by the petitioners, and (3) because the changes in location were not marked upon the chart and the amended chart not filed in

the office of the Clerk of the Court. The first of the reasons is, in our opinion, without merit. Section 93 of Article 72, quoted in full above, provides that upon a petition being filed either for including bars within or excluding barren bottom from the lines of the survey, a plat designating the location shall be filed, or in the absence of a plat, the location shall be designated with reasonable certainty by land marks. A plat was not filed, but the designation contained in the petition was a full compliance with the alternative requirement. As to the second contention, we are of the opinion that when a petition in the name of at least twenty-four residents of the county, signed by attorneys of the Court, the requirement that the petition should be filed in writing is met without the actual signing by the petitioners. The presumption is that the attorney has authority to act, and the Court thereupon assumes jurisdiction. *Henck v. Todhunter,* 7 H. & J. 275; *Kelso v. Stigar,* 75 Md. 376; *Benton v. Stokes,* 109 Md. 117. The third reason assigned why that Court did not acquire jurisdiction does not raise a jurisdictional fact at all. The amended plot, under the terms of the Act, is not to be filed until after the finding of the Court, and then is to considered as conclusive evidence. The failure to file cannot vitiate the finding.

We have examined all the testimony most carefully, to ascertain whether the charge of fraud has been so established as to induce a Court of Equity to set aside its decree, passed almost five years previously, and have reached the conclusion that fraud has not been shown in anything like the satisfactory and clear manner in which, under all of the decisions of this Court, it must be shown in order to obtain the drastic relief prayed for in this bill.

The greater part of the testimony is upon the question of whether the lots in question are composed of natural bars or barren bottoms. This was not the point to be determined in the inquiry. That had been settled by the proceedings of 1908, and was to be considered as final, unless the charge

of fraud was established, and in that event it was an open question to be later established as a fact by appropriate proceedings. Was or not the action of the appellants so tinged with fraud in those proceedings as to vitiate the finding therein, was the question to be determined, and the testimony should have had a bearing upon that phase. The fact that testimony could be and was produced to the effect that this section was a natural bar would not show that these appellants were guilty of fraud because they had alleged the contrary as a fact. That was the fact that the petition had asked the Court to determine in an open proceeding, and which that Court had so determined as recited in its order "after hearing testimony." To have the Court say, because certain witnesses now testify that this section is contrary to what the Court previously found it to be, that that in anyway gives ground or reason for imputing fraud to those who previously alleged, and now support, the Court's original view, would be to permit fraud to be shown in a way different from any adjudged case that has come to our attention. But we are not to be understood as saying that fraud must necessarily be shown by direct evidence alone.

It appears from the evidence that before the petition was presented to the Court forty residents of Somerset county, practically all of whom were those mentioned as the petitioners, signed a paper of the following tenor: "We, the undersigned tongmen, reside in Somerset County and are engaged in tonging for oysters in Manokin River and vicinity. We hereby affirm that the ground located between Carmen Point and San Pierre Point, which is now designated by the Shell Fish Commission as natural oyster bar, is not properly designated as such, but should have been made subject for lease for oyster culture." Carmen Point was admittedly meant for Carmol Point. This plain and unequivocal statement was prepared by the secretary of the Commission at the request of one of the appellants and circulated for signatures by another appellant. And although several of

the signers testified they signed it under a misrepresentation of facts, yet it is difficult to see how there could be any misrepresentation as to induce anyone to attest to such a plain statement of fact as was contained therein, unless at the time of so signing they believed the truth of the written statement. Several of the petitioners testified that the misrepresentation consisted of the appellant, who circulated the paper, stating that he wanted to take up ten acres for a dumping ground. While that appellant denied having stated such a reason, yet, if we assume he did, one is met with the fact that at that time, under the law then in effect, one person was limited to lease of ten acres.

The testimony establishes that shortly after the filing of the survey one of the appellants visited the commission at its office in Annapolis at a full meeting of the board and informed the members of the mistake, he thought had been made; that he was advised by them to file the petition as the only way of correcting the survey. It also appears that the engineer of the commission gave in writing the description of the location which was later embodied in the petition. This writing was filed as an exhibit.

It would be difficult to have a proceeding more open and frank than this one, from the record, appears to have been, and we therefore are of the opinion that the appellees have failed to establish fraud.

We do not deem it necessary to prolong this opinion with a discussion of the constitutional questions raised, other than to say we do not think any objection well taken, for the constitutionality of this class of legislation has been recognized since *Jackson* v. *Bennett*, 80 Md. 76.

*Decree reversed and bill dismissed, with costs to the appellants.*