JEPTHA E. PITSNOGLE AND MARY E. PITSNOGLE,
HIS WIFE,

vs.

THE WESTERN MARYLAND RAILWAY COMPANY.

*Condemnation proceedings: abandonment of—; when damages
may be recovered.*

Chapter 117 of the Acts of 1912, amending the law as to con-
demnation of land, while it makes no provision for abandon-
ment of the condemnation proceedings, does not repeal, and is
not inconsistent with, section 30 of Article 26 of *Bagby's Code,*
which reserves the right to abandon condemnation proceedings
at any time within 90 days after ratification, provided the
abandonment be by written notification to the owner.     p. 673

But a party, against whose land condemnation proceedings
have been instituted, and afterwards abandoned, has adequate
remedy for any injury he has sustained thereon, through the
acts of the condemning party.                          p. 674

*Decided June 26th, 1914.*

Appeal from the Circuit Court for Washington County.
(KEEDY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Harry Brindle* and *Frank G. Wagaman,* for the appellant.

*Charles A. Little* and *Benjamin A. Richmond,* for the appellee.

Constable, J., delivered the opinion of the Court.

The question in this appeal involves the right of a condemning party to abandon condemnation proceedings, instituted under Chapter 117 of the Acts of 1912, after the rendition of the verdict of the jury, on exceptions to award of the appraisers but before judgment on the verdict.

This case has once been before this Court and is reported in 119 Md. 673, which was an appeal by the appellants herein from the judgment of condemnation, which judgment was affirmed by this Court.

The appellee filed its petition against the appellants, in which it alleged that it "desires to acquire the said parcel of land to be used for the purpose of locating its railroad tracks, switches, yard tracks and side tracks * * * on part of the same, and for the location of a substitute private road on the remainder thereof in place of the existing private road which the petitioner desires to close and to use for railroad purposes, said private road being known and designated as the "Startzman Road," all of which above described parcel of land it will be necessary for the petitioner to have and use for the said purposes for the proper working and operation of its said railroad, and for the proper handling of its railway business, and for said road in perpetuity."

After the affirmance of the judgment of condemnation, and upon the cause being remanded, further proceedings were taken under the provisions of Chapter 117 of the Acts of 1912. Appraisers were appointed as provided by said Act, and upon their return exceptions were filed thereto by the appellants without waiving a jury trial. The same were tried in Court before a jury on the 13th day of December, 1913, and a verdict assessing the damages at $4,000 was returned. On the 16th day of the same month the appellee

filed a motion for a new trial. During the pendency of this motion, but before it was heard, on the 9th day of January, 1914, the appellee filed in the case four papers:

(1) An order dismissing the motion for a new trial.

(2) An order releasing the judgment of condemnation.

(3) An order dismissing, abandoning and non-prossing the original petition filed by the appellee in the case.

(4) Notice to the appellants that the appellee had abandoned the proceedings to condemn their land and all intention of proceeding with said condemnation. This notice was duly served upon the appellants.

The appellants filed a motion *"ne recipiatur"* to the above notice and each of the orders, except the motion to dismiss the motion for a new trial, and further moved the Court to enter judgment upon the verdict of the jury. The Court overruled all of the motions of the appellants and thereupon this appeal was prayed. At the hearing of the above motions, testimony was taken, from which it appears that the right of way called the "Startzman Road" led into the "Startzman Farm" over the land of the appellee; that the "Startzman Farm" had been purchased by the appellee subsequent to the time of entering the judgment of condemnation and before the appeal first taken in this case. It was further shown that the plan of the appellee for its yard, side tracks, etc., was partly carried out upon its own land, but upon no part of the land sought to be condemned; that a portion of the right of way had been rendered impassable by the fill of dirt placed thereon. It was also shown that the appellee did not at any time take possession of any part of the land described in the condemnation proceedings nor enter thereon.

The right of abandonment by a condemning party of condemnation proceedings instituted by it has been the subject of much litigation in this country, and before discussing the decisions and statutes in force in Maryland it might be well to quote what is so forcibly stated in 7 *Enc. Pl. & Pr.* 673, to be the general rule: "A railroad company which, in the

exercise of the right of eminent domain, has instituted condemnation proceedings, may subsequently abandon its purpose of taking the property and discontinue the proceedings, and, if it so desires, may select a route other than the one first proposed. Where the condemning party considers the compensation assessed too high, or so high as to render it expedient to go around instead of through the tract, it may abandon the proceedings, and leave the landowner undisturbed." The same authority at page 674 says: "The general rule, in the absence of statutory provisions to the contrary, is that the condemning party may discontinue the proceedings at any time before the rights of the parties have become vested. There is not even a cavil as to the correctness of this rule, but as to the time when the rights of the parties become vested there is a diversity of opinion. There seems to be no denial of the right of the condemning party to abandon the proceedings where they have not been confirmed or consummated. It may do so at any time prior to the confirmation of the commissioners' report, after the assessment of damages has been made, and the award has been filed; and either before the submission of the inquiry to a jury, or after verdict and prior to judgment."

After pointing out that the New York rule is that the proceedings cannot be abandoned after the commissioners' report has been confirmed, and that rule is substantially the same in Louisiana, Nebraska, New Hampshire, New Jersey and Pennsylvania, the same authority adds: "Opposed to the New York rule is the contrary doctrine which obtains in the great majority of the states in this country. In these jurisdictions the test laid down is to inquire whether the title to the land has vested in the condemning party, and a right to the damages in the landowner, and the discontinuance of the proceedings is permitted until the happening of that event, which does not occur prior to the actual payment or securing of the compensation in the manner required by law, or until the condemning party has entered into possession of

the land. In these jurisdictions the company may abandon the proceedings at any time before final judgment, or after affirmance of the verdict in favor of the landowner, or after judgment assessing the damages, or even after appeal from the judgment."

Under these general rules, if nothing to the contrary appeared in our decisions or statutes, the appellee would have the right to abandon its proceedings and the appellant would not be entitled to a judgment on the verdict, there then remaining nothing of the case to support a judgment. But let us briefly examine our statutes and decisions.

This Court in *Graff* v. *Balto.,* 10 Md. 544, following the case of *Balto. & Susquehanna R. R. Co.* v. *Nesbit,* 10 Howard, 395, which was a case upon the Maryland Statutes, adopted the language of the Supreme Court: "It can hardly be questioned, that, without acceptance by the acts and in the mode prescribed, the company were not bound; that if they had been dissatisfied with the estimate placed upon the land, or could have procured a more eligible site for the location of their road, they would have been at liberty before such acceptance wholly to renounce the inquisition. The proprietors of the land could have no authority to coerce the company into its adoption. This being the case, there could up to this point be no mutuality, and hence no contract, even in the constrained and compulsory character in which it was created and imposed upon the proprietors by the authority of the statute."

These decisions were followed in *State* v. *Graves,* 19 Md. 351; *Merrick* v. *Balto.,* 43 Md. 219; *Norris* v. *Balto.,* 44 Md. 604; *Balto.* v. *Musgrave,* 48 Md. 282; *Black* v. *Balto.,* 50 Md. 241; *Balto.* v. *Hook,* 62 Md. 371.

In *Norris v. Balto., supra,* the Court thus expressed the rule: "It has long been the settled law of Maryland, that both private and municipal corporations, when authorized to exercise the power of eminent domain, have the right to renounce the inquisition and select a more eligible route, or

to wholly abandon the improvement or enterprise, at any time before actual payment of the amount assessed, either by commissioners or jury, and until that time no title to the property condemned vests in the corporations."

Under these Maryland authorities, as well as under the general rule stated in *Enc. Pl. & Pr.,* it is clear that the test is whether or not the title to the land has vested at the time in the condemning party.

By Chapter 371 of the Acts of 1870, codified in Section 30, Article 26 of Bagby's Code, it is provided: "In all cases of proceedings to condemn lands, for any purpose whatever, under any law or charter, upon the return and ratification of the inquisition by the proper Court, and in all cases in which inquisitions may have been heretofore returned and ratified, the said Court shall render a judgment against the persons or corporation for whose use the condemnation may be so made in favor of the owners named in the requisition for the amount of the damages awarded by the jury, and unless within ninety days after condemnation ratified, the same shall be abandoned by written notification to said owners, execution may immediately thereafter issue on said judgment, as in other cases of judgments rendered in Courts of law."

Chapter 117 of the Acts of 1912 does not in terms repeal any of the prior legislation upon condemnation except wherein the same may be inconsistent with the provisions of that Act. The inquiry now is, has the Act of 1912 rendered nugatory the prior decisions and repealed Section 30 of Article 26. Nowhere in the Act of 1912 is there any provision whatever made for abandonment of the proceedings when once begun. This in itself would be, at least, an indication of the intention of the Legislature that they did not intend, by the enactment of a new procedure to acquire property through the power of eminent domain, to change the long settled rule upon the question. But is Section 30 of Article 26 inconsistent with the provisions of the Act of 1912?

Under the law prior to the enactment of the Act of 1870 there was no provision for a judgment upon which an execution could be based, but merely a ratification of the inquisition, and the land proprietor was at the mercy, to a certain extent, of the condemnor until the title to the property passed by either the payment of the damages assessed or tender thereof. This Act provided a remedy for the landowner in that he was entitled to a judgment *"in personam,"* and execution for the same, unless the proceedings were abandoned, within ninety days after the rendition of such judgment, by written notice. The Act of 1912, like the prior condemnation acts, contained no provision for the enforcement of a judgment, and like those acts is dependent upon Section 30, Article 26 (which is codified, not under the head of eminent domain, but under that of Courts) for the full completion of the proceedings. Our opinion is that the provisions of Section 30, Article 26, are not inconsistent with the provisions of the Act of 1912, and that therefore said section is not repealed by said Act but is still in force.

We cannot agree with the appellants, when, admitting for the sake of argument that Section 30, Article 26, has not been repealed by the Act of 1912, they contend that said section makes it mandatory upon the Court when it directs the entering of a judgment after the assessment of the damages. If the law of this State permits a condemnor to abandon and dismiss the proceedings before a judgment is finally rendered, as we are of the opinion it does, we can see no way in which a judgment can be entered for there is nothing for a judgment to rest upon, all prior requisites to it being dismissed.

The further contention of the appellants that the appellee is in duty bound to provide a substitute road for the Startzman road is not presented under the facts contained in this record. It must be borne in mind that the proceedings in this case did not ask for the condemnaton of the rights of

any one in the Startzman road, but covered a tract of land separate and distinct from said road.

The improvements, so far as the land sought was concerned, were abandoned, and the land not taken nor entered upon by the appellee. Therefore the appellants' title to the sought land has not been affected by the condemnation proceedings. If, however, any rights the appellants might have had in the Startzman road have been affected by the taking of a portion of that road by the appellee for its uses, they, of course, have an adequate remedy.

The cases cited and relied upon by the appellants in support of their contention, *N. C. R. R. Co.* v. *Baltimore,* 46 Md. 425; *Eyler* v. *County Commissioners,* 49 Md. 257, and *Baltimore City* v. *Cowen,* 88 Md. 447, are all distinguished from the present case on the facts, for in them the Court was dealing with cases where easements were sought to be acquired where prior easements already existed, whereas no rights in the Startzman road were sought to be acquired by these proceedings.

*Order affirmed, with costs to the appellee.*