GEORGE A. COX

*vs.*

SAMUEL REVELLE, JAMES W. REVELLE AND
WILLIAM J. REVELLE.

*Oyster laws: policy; Chapter 711 of Acts of 1906. Eminent
domain: oyster leases from State; condemnation; public
use; restricted to citizens of county. Police regula-
tions: not within prohibition of Constitution.
Courts and Acts of Assembly.*

The intent and policy of Chapter 711 of the Acts of 1906
was that natural oyster beds or bars should not be subject to
lease for private use, but should be reserved as public oyster
fisheries for use in common by the people of the State, under
suitable regulations and license.                    p. 587

Leasehold interests acquired from the State are as completely
subject to condemnation for public use as titles derived from
any other source.                    p. 584

Police regulations with respect to such estates do not cause
any impairment within the meaning of the Federal Constitu-
tion.                    p. 584

With the policy of legislation regarding the disposition of
the oyster grounds the courts have no concern; the sole author-
ity to deal with that subject is vested in the Legislature.  p. 586

Chapter 265 of the Acts of 1914 amended Chapter 711 of
the Acts of 1906, by providing a method by which, upon peti-
tion alleging that five or more acres of natural oyster beds or
bars had been excluded from the surveys of natural beds, filed
in the Circuit Court nearest the area in question, the same
should be heard in the said court, before a jury (unless a jury
trial was waived by all the parties), with the right to appeal
to the Court of Appeals; the Act provided for the condemnation
of any natural grounds or beds that might so be found wrong-
fully excluded; the law specially safeguarded the rights and in-

terests of lessees under leases from the State, in existence at the
time the Act of 1914 went into effect, and provided against the
divesting of those rights until compensation could be awarded
therefor in the condemnation proceedings: *Held,* that in view
of the provisions of the Act protecting the outstanding rights of
the lessees, the Act was not in violation of section 40 of Article
3 of the Constitution, prohibiting the taking of private prop-
erty for public use without just compensation.        p. 586

Under the provisions of Chapter 711 of the Acts of 1906,
certain areas had been leased to private parties for the purpose
of oyster farming; the validity of the lease had been attacked
by proceedings at law, but the attack was unsuccessful in the
lower court, and on appeal the lower court was sustained;
Chapter 265 of the Acts of 1914 provided new definitions of
what were natural bars, and provided new proceedings for the
legal determination of the questions: *Held,* that in proceedings
under the latter Act, former judicial findings under the Act of
1906, regarding the same area, could not be pleaded as *res
adjudicata.*                              p. 588

Courts have the authority to determine whether the use for
which it is proposed to take private property, under the power
of eminent domain, is public in its nature; but when that
inquiry is answered in the affirmative, the question of the pro-
priety of exercising that power is exclusively in the legislative
discretion.                              p. 588

The taking of oysters by the public, under license of the
State, from lands and waters subject to its ownership and con-
trol, is undeniably a public use.                p. 587

But for such a use to be public, it is not necessary that every
natural oyster bar should be open to the public generally; the
right may be validly restricted to the citizens of the county
within whose territory the fishery is located.        p. 587

.  *Decided April 8th, 1915.*

Appeal from the Circuit Court for Somerset County.
(PATTISON, C. J., and STANFORD, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Wm. H. Maltbie* and *Alonzo L. Miles* (with whom was *H. Fillmore Lankford* on the brief), for the appellant.

*Geo. Whitelock* and *W. Thomas Kemp* (with *Whitelock, Deming & Kemp* and *Henry J. Waters* on the brief), for the appellees.

URNER, J., delivered the opinion of the Court.

The Board of Shellfish Commissioners, acting under authority conferred by Chapter 711 of the Acts of 1906, leased to the appellant, on May 20, 1912, for the term of twenty years, a lot of ground in the bed of Manokin River, in Somerset County, to be used for the purposes of oyster culture. It was the intent and policy of the law that natural oyster beds or bars should not be subject to lease for private use, but should be reserved as public·oyster fisheries for use in common by the people of the State under suitable regulation and license. The land demised to the appellant had originally been classed as ineligible for leasing, as the investigation and survey of oyster grounds for which the Act made provision had officially shown it to be included in one of the areas designated as natural beds or bars. This ascertainment, however, was later reviewed by the Circuit Court for Somerset County, upon a petition by residents, as authorized by the statute, and the lot in question, as part of a larger tract, was determined to be "barren bottom" and therefore available for leasing, and the report and plat of the survey were accordingly amended. By the terms of the law, as it then existed, such an adjudication was final. It was about four years after the survey was thus revised that the appellant's lease was executed.

In August, 1914, the appellees filed a petition in the Court below alleging that the ground leased to the appellant was natural oyster bar and praying that it be so declared. This action was taken by virtue of Chapter 265 of the Acts of

1914, which amended the Act of 1906 by providing, in part, by Section 94B, that: "Three or more residents of this State may at any time before January 1, 1915, file a petition in writing alleging that five or more adjacent acres of natural beds or bars situated in the Chesapeake Bay outside county waters, or one or more acres of natural beds or bars within the territorial limits of any county of this State, to be described in said petition, have been excluded from the surveys or re-surveys of natural beds or bars of this State, such petition to be attested by the several oaths of the petitioners, and to be filed in the Circuit Court for the county in which, or nearest to which, the area in question is located." The Shellfish Commissioners, and the lessees, if any, of the disputed ground, are required to be made defendants, and after summons and due opportunity to answer, the Court is authorized and directed·to "proceed promptly to hear all evidence adduced by the parties" and to "decide whether the area described in said petition is·or is not a natural bed or bar as defined in Section 83, and judgment shall be entered accordingly." Section 94B continues: "The hearing in said Circuit Court shall be before a jury, unless jury trial be waived by all parties, in which event the hearing shall be before any judge or judges of said Court. An appeal to the Court of Appeals of Maryland may be taken by either party to said case from the judgment of said Circuit Court within thirty days thereafter, and the Court of Appeals shall have power to review all questions of fact or law involved. If the final decision shall be that the area in question is a natural bed or bar, amended plats shall be made and copies filed as provided in Section 94A."

A further amendment, contained in Section 94C, enacts that: "The rights and interests of lessees under leases outstanding and in force at the time of the passage of this Act (April 3, 1914) covering areas within the limits of natural beds or bars which may be established by the resurveys provided for by Section 94A, or by ,proceedings taken under Section 94B, and the oysters belonging to such lessees, located

on such areas, shall be condemned by the State of Maryland for the use of the public."

To the petition of the appellees the Board of Shellfish Commissioners filed an answer neither admitting nor denying the allegations as to the character of the ground leased to the appellant, but demanding strict proof. The appellant, by his answer, denied that the lot embraced in his lease was natural bar, and relied upon the previous finding of the Court on that subject as the basis of a plea of *res adjudicata.* In support of the latter theory of defense the answer alleged that in November, 1912, a bill of complaint was filed in the Circuit Court for Somerset County in which the present petitioners, with others, were plaintiffs, and the present respondent was one of the defendants, and in which the allegation was made that the area found by the Court in the former proceeding to be barren bottom was in fact natural bar and the judgment to the contrary had been obtained by fraud and, together with the lease in controversy, should for that reason be set aside, and a decree passed to that end was reversed by the Court of Appeals and the bill dismissed, in *Cox* v. *Bennett,* 123 Md. 356, whereby the prior determination as to the leasable nature of the area was left in full force and effect. The answer also averred that the Act of 1914, which permitted the action now pending, is in conflict with Section 10 of Article 1 of the Constitution of the United States which prohibits State legislation impairing the obligation of contracts, and that it likewise violates Section 40 of Article 3 of the Constitution of Maryland which forbids the enactment of any law authorizing private property to be taken for public use without just compensation being first paid or tendered.

The petitioners demurred to the lessee's answer in so far as it set up the defense of former adjudication and the constitutional objections we have noted. The demurrer was sustained, and the case having proceeded to trial upon the question of fact raised by the pleadings as to whether the leased land was a natural bed or bar, a verdict was rendered in the affirmative upon that issue, and a declaratory judgment to

the same effect was duly entered. In the course of the trial two exceptions were reserved by the lessee, one relating to the admission of evidence and the other to the action of the Court on the prayers. The objections presented in this form were identical with those which had been overruled on demurrer.

The defense on constitutional grounds will be first considered.

It is entirely clear that in merely providing for a re-opening of the investigation as to the nature of the ground leased by the State to the appellant, the Act of 1914 does not impair the obligation of their contract. The judgment entered in the proceeding which the Act allowed for the purposes of such an inquiry is simply a formal declaration as to an ascertained condition. It makes no reference whatever to the existing lease. Notwithstanding such a determination the law recognizes the contractual rights of the lessee to their full extent. The interests created by the lease are given the same consideration that any other property is entitled to receive at the hands of the State. The lot demised having been found to be a natural oyster bar, provision is made for its condemnation for public use upon the distinct theory that the adjudication as to its real nature has not impaired or affected the vested estate of the lessee. In directing the acquisition of such a leased lot the Act expressly declares, in Section 94C, that: "No right, interest or property" of the lessee "shall be divested until the compensation awarded in such condemnation proceedings" * * * has first been paid. The appellant's contractual rights are thus duly regarded and protected by the law, and are required to yield only to the sovereign power of eminent domain.

It is, of course, not disputed that a leasehold interest acquired from the State is as completely subject to condemnation for public use as a title derived from any other source, or that the exercise of the power with respect to such an estate does not cause an impairment of contract within the meaning of the Federal Constitution. *Long Island Water*

*Co.* v. *Brooklyn,* 166 U. S. 685; *West River Bridge Co.* v. *Dix,* 6 Howard, 507; *New Orleans Water Works Co.* v. *Rivers,* 115 U. S. 674; *St. James Church* v. *B. & O. R. Co.,* 114 Md. 442; *Turnpike Road* v. *Railroad Co.,* 81 Md. 248; *B. & H. Turnpike Co.* v. *Union R. Co.,* 35 Md. 224. But it is urged that the Act of 1914, in authorizing proceedings like the one before us, directed the ascertainment of natural beds and bars to be made according to a specified standard which is different from the one applied in the original survey. This contention has reference to the fact that the Act of 1906 contained no definition of such areas, while the Act of 1914, by an amendment of Section 83, provides that the term "natural beds or bars" shall be construed to mean "all oyster beds or bars under any of the waters of this State whereon the natural growth of oysters is of such abundance that the public have successfully resorted to such beds or bars for a livelihood, whether continuously or at intervals, during any oyster season within five years prior to" the new inquiry under the terms of the statute. The annual report of the Shellfish Commissioners submitted in 1912 shows that they adopted, for the purposes of their survey and location of natural oyster bars under the Act of 1906, a definition having practically the same meaning and effect as the one later approved by the Legislature. If, however, it be assumed that the Act of 1914 prescribed an entirely different rule for determining what areas were to be devoted to the use of the public, we are unable to find in that fact any support for the appellant's claim that his contractual rights under his lease are being impaired. It would have been competent for the State to provide for the appropriation for public use of all the leased oyster grounds, regardless of the question as to whether they were natural beds or barren bottoms. If this course had been pursued in the exercise of the right of eminent domain, and with due provision for just compensation, the lessees could not complain that the constitutional prohibition against legislative impairment of contracts was violated.

The policy of the existing law with respect to the use and

disposition of oyster grounds is a question with which this Court has no right to be concerned. The sole authority to deal with that subject is vested in the Legislature. It is within the discretion of that department of the State government to decide whether the whole or any part of either the natural bars or the barren bottoms shall be open to free or to qualified public use, or shall be reserved and controlled for conservation, cultural or revenue purposes. In the exercise of its ample power the Legislature has determined that oyster areas having certain characteristics shall be devoted to the use of the public. It has provided for a judicial ascertainment of the facts in reference to any location to which leasehold rights have attached, and, in a proper case, for the acquisition of such interests for the public by condemnation. The lessee is summoned and heard upon the preliminary question as to the character of the leased ground, and, by express enactment, he is protected in his title and possession until the State shall have paid him the just compensation which may be awarded him by due process of law. In view of the safeguards thus placed by the statute around the rights and interests of the appellant, there is clearly no impairment of contract to which the constitutional provision relied upon can be applied.

The contention that the Act of 1914 is in conflict with Section 40 of Article 3 of the Maryland Constitution, prohibiting the taking of private property for public use without just compensation, requires no extended discussion. The provision of the statute against any divestiture of the property rights to be condemned until the compensation awarded is paid has already been emphasized. As the Act, by its own terms, gives expression and effect to the constitutional rule to which the appellant refers, there is no room for the theory that the limitation it imposes has in this instance been disregarded.

It was urged that the Act does not state for what public use the natural bars under lease are to be condemned, and that the Court is consequently not in a position to decide

whether the intended use is in fact of a public nature. The further point is made that if the lots so acquired by the State are designed to be used for the purposes of a public oyster fishery under existing law, regard must then be had to the statutory provision that the right to take oysters for sale from grounds within the limits of any county shall be confined to its own residents, and it is said that this is not to be considered a public use within the intent of the Constitution. As to the question thus proposed we can have no doubt or difficulty. The plain purpose of the Act is to secure all natural beds or bars for the public use, to which oyster areas owned by the State may be subjected, under laws now in force or hereafter enacted. There can be no doubt as to the public nature of the use to which such grounds are susceptible. The taking of oysters by the public, under license of the State, from lands and waters subject to its ownership and control, is undeniably a public use. *Smith* v. *Maryland,* 59 U. S. 71; *State* v. *Applegarth,* 81 Md. 293; *Hess* v. *Muir,* 65 Md. 599. In order to answer that description it is not necessary that the use, as to every natural oyster bar, shall be open to the public generally, but the right may be validly restricted to the citizens of the county within whose territory the fishery is located. The principle was stated and applied in *Webster* v. *Pole Line Co.,* 112 Md. 429, that a public use need not be available to the whole public, and that it may be confined to the inhabitants of a designated locality, provided it is exercisable in common and is not limited to particular individuals.

The remaining question to be considered relates to the defense of former adjudication. In our opinion the principle upon which such a defense must depend is not applicable to the case presented. This is a statutory proceeding to determine the desirability of property for public use, according to a prescribed standard, as a preliminary to its acquisition for the public by condemnation. An adjudication as to the leaseable character of certain oyster grounds under the Act of 1906 could not justify a denial by the Court of the State's

power to condemn such property for public purposes under a later enactment. The legislative judgment as to the expediency of such an appropriation cannot be thus controlled by judicial action. The Courts have undoubtedly authority to decide whether the use for which private property is proposed to be taken under the power of eminent domain is public in its nature, but when this inquiry is answered in the affirmative, the question as to the propriety of exercising the power is committed exclusively to the discretion of the Legislature. *Shoemaker* v. *United States,* 147 U. S. 282; *Arnsperger* v. *Crawford,* 101 Md. 252; *New Cent. Coal Co.* v. *George's Creek C. & I. Co.,* 37 Md. 560; 15 *Cyc.* 629. By the judgment of the Circuit Court for Somerset County rendered in 1908 it was simply declared that the ground under consideration was barren bottom, and the only effect of the decree of this Court in the equity proceeding to invalidate that finding was to dismiss the bill of complaint on the theory that the charge of fraud had not been sustained. *Cox* v. *Bennett,* 123 Md. 361. It would be giving the doctrine of *res adjudicata* a very anomalous application to hold that it can prevent the exercise by a judicial tribunal of a special statutory jurisdiction to re-open an inquiry previously made, under authority similarly conferred, although ample security is afforded to every vested interest. It has already been observed that the Legislature could have directed the condemnation of the leased oyster lots for public use without a prior inquiry by a Court proceeding as to the special character of the ground, and notwithstanding a previous adjudication that they were leaseable. There is hence no possible prejudice to the lessee in the fact that a preliminary investigation, in which he has an opportunity to be heard, has been provided for the ascertainment of the actual condition of the property to be acquired. The theory of estoppel by former judgment was, therefore, properly rejected.

The various questions raised by the record have now been considered, and we agree with the Court below as to all of the rulings.

*Judgment affirmed, with costs.*