## STATE *v.* AMBROSE
[No. 5, October Term, 1948.]

354

356

*Decided November 10, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, and MARKELL, JJ.

*J. Edgar Harvey, Deputy Attorney General,* with whom was *Hall Hammond, Attorney General,* on the brief, for the appellant.

*Walter H. Buck* and *Edward H. Burke,* with whom were *R. Contee Rose* and *Eben F. Perkins* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is one of five cases in Somerset County in which the issues are the same and which, by stipulation, will all be decided by the decision in this case.

In 1913 the Board of Shell Fish Commissioners, pursuant to the provisions of Chapter 711 of the Acts of 1906 and amendments, leased, in the name of the State, to E. Griswold Thelin, now deceased, appellee's predecessor in interest, a lot of land in Tangier Sound for a term of twenty years, for oyster culture, at specified rentals.

By chapter 265 of the Acts of 1914, known as the Shepherd Act, the Act of 1906 was amended. In section 83

there was inserted a definition of "natural beds or bars", which by both the original and the amended acts were excluded from leasing. Code of 1939, Art. 72, sec. 93. A new section, 94A, authorized resurveys to correct previous surveys and show natural beds or bars thus resurveyed, provided that such resurvey should not affect leases, of area resurveyed, in force at the time of such resurvey unless the lessees should voluntarily surrender their leases, or should forfeit them by non-payment of rentals, or unless "the rights, interests and properties" of the lessees should be acquired by the State "by condemnation proceedings instituted not later than January 1st, 1915, as provided in Section 94C". Art. 72, sec. 107. Sec. 94B provided for proceedings, to be instituted by three residents of the State before January 1, 1915, for judicial decision whether any specified area, excluded from the surveys or resurveys of natural beds or bars, is or is not a natural bed or bar as defined in section 83 (now 93). Art. 72, sec. 108. Section 94C provided that "The rights and interests of lessees" under leases already in force, "covering areas within the limits of natural beds or bars which may be established by the resurveys provided for by Section 94A [now 107], or by proceedings taken under Section 94B [now 108], and the oysters belonging to such lessees, located on such areas, shall be condemned by the State of Maryland for the use of the public. The proceedings for the acquisition by the State of the rights, interests and properties of such lessees", should be "that set forth in Chapter 117 of the Acts of 1912," and it should be the duty of the State's Attorney to institute forthwith condemnation proceedings in behalf of the State against the lessees and "to conduct said proceedings to a finality * * *. But no such right, interest or property shall be divested until the compensation awarded in such condemnation proceedings to the lessees or those claiming under them has first been paid to them by the State of Maryland". Art. 72, sec. 109. The Shepherd Act made no appropriation to pay such compensation. Chapter 117 of the Acts of

1912 was completely repealed and reenacted with amendments by Chapter 463 of the Acts of 1914, which (with subsequent amendments) is now Article 33A of the Code. Section 15 of the Act of 1914 provided that (with an exception with respect to highways) the State and any municipal or other corporation or person which has a right to acquire property by condemnation "shall acquire such property, if condemnation proceedings be resorted to", in pursuance of and under the provisions of Article 33A, "anything in any other Public General or Public Local Law or private or special statute to the contrary notwithstanding".

Proceedings instituted in 1914 against the Board of Shell Fish Commissioners and Thelin under section 94B [108] resulted in 1915 in a judgment that the land or area covered by Thelin's lease is a natural bed or bar. Condemnation proceedings instituted in 1915 by the State's Attorney, in the name of the State against Thelin, resulted on October 26, 1915 in a verdict "Jury finds for the plaintiff the leasehold interest and property mentioned in petition and assesses damages to the defendant at $9000" and in "Judgment of condemnation of the leasehold interest and property mentioned in the petition in favor of the petitioner, and judgment in favor of the defendant, against the petitioner for the sum of $9000 with interest from this day until paid and Costs Nisi". An appeal was filed on November 4, 1915 and dismissed on December 13, 1915 by the State. A motion by the State to strike out the judgment was filed on December 3, 1915 and overruled on December 21, 1915. An appeal was filed on December 29, 1915. This appeal was not prosecuted. This case was one of thirty-eight oyster condemnation cases instituted and prosecuted in Somerset County. The jury awards in the thirty-eight cases aggregated $257,975. 1 *Reports of Attorney General*, 13. By Chapter 582 of the Acts of 1916 $75,000 was appropriated for the compromise of these "judgments" and the Board of Public Works was authorized to abandon any of the cases which could not be compromised. Under this

Act all but five of the thirty-eight cases were compromised. The awards in the five cases, including the *Thelin* case, aggregate $47,000.

In 1927, at the instance of Thelin's executor, a writ of *scire facias*, to "revive on the above judgment", was issued "on judgment dated 26th Oct. 1915 for $9,000 with interest from date and costs $12.80," and was served on the State's Attorney. After entry of a judgment of *fiat nisi*, no defense was made by the State and judgment of *fiat* was entered on January 9, 1928. In 1937 the judgment was entered to the use of appellee. In 1939, at the instance of appellee, another *scire facias* was issued "on the above judgment" and was served on the Governor and the State's Attorney. A motion of the State to quash the writ, on grounds including those now relied on by the State, was overruled, and judgment of *fiat* was entered on September 23, 1940.

By the 1945 Budget Act (Act of 1945, ch. 893, Item 32 of Supplemental Budget), $10,000 was appropriated "For the settlement of claims of [appellee and the four other named claimants] for damage to oyster beds, settlement to be effected on terms approved by the Board of Public Works." No settlement of appellee's "judgment" or any "claim" of his "for damage to oyster beds" was effected.

On September 23, 1946 the Board of Public Works authorized the dismissal of the condemnation proceedings in this *Thelin* case. On November 12, 1946 the Attorney General filed in the condemnation proceedings an "order to mark proceedings dismissed" and also a "motion to strike out" appellee's "judgment". Appellee answered and opposed the motion. Testimony was taken and argument heard. By Joint Resolution No. 17, approved April 16, 1947, the Governor was requested to include in a supplement to the Budget for the year beginning July 1, 1947, an item appropriating $47,000 to pay the holders of the five condemnation "judgments", including appellee, "the face amounts of said judgments, without interest", payment of the appropriation to be made "only if a favor-

able final ruling in the test proceedings now pending",
*i. e.,* the instant case, was obtained by appellee. No such
provision was made in the Budget. On January 16, 1948
the lower court filed an opinion, in which it reviewed at
length the facts relating to the lease and the litigation
from 1913 to date, including among others all facts that
we have stated, and for reasons also fully stated in the
opinion entered an order overruling the motion. From
this order the State has appealed.

In the lower court and in this court the provisions in
the Shepherd Act that condemnations proceedings un-
der the act should be instituted before January 1, 1915
was apparently regarded by both parties as directory,
not mandatory. We assume, without deciding, that this
view is correct, at least when the preliminary proceed-
ings under section 94B were instituted, but not con-
cluded, before January 1, 1915.

The basic question now presented is whether the State
has the right, thirty years after the jury's award but
before payment or tender of compensation, to abandon
the Thelin condemnation proceedings under the Shep-
herd Act and strike out the "judgment" in the condem-
nation case. Unquestionably it has, unless the right has
been denied or lost under (*a*) the Act of 1870, ch. 371,
Code of 1939, Art. 26, sec. 29, (*b*) the general condemna-
tion Act of 1914, Art. 33A, (*c*) the Shepherd Act itself,
Art. 72, sec. 109 or (d) other special facts or circum-
stances relied on by appellee. Almost a hundred years
ago it was decided both by the Supreme Court and by this
court, that although a jury's inquisition, when confirmed,
determines the value to be paid if the property is taken,
the inquisition does not constitute a taking, and the con-
demning public or private corporation, if dissatisfied with
the valuation or for any other reason, may abandon the
condemnation and is not obligated to take the property
or pay the amount of the inquisition. *Baltimore & Sus-
quehanna Railroad Co. v. Nesbit,* 10 How. 395, 13 L. Ed.
469; *Graff v. Mayor, etc. of Baltimore,* 10 Md. 544. It
was indicated in the *Graff* case and definitely held in

*Norris v. Mayor, etc. of Baltimore,* 44 Md. 598, 606, 608, that the property owner may maintain against the condemning corporation an action for damages caused by delay in electing, after assessment of damages, whether to take the property or abandon the condemnation. Much later it was held that unreasonable delay in electing may itself amount to abandonment of the condemnation. *Wagner v. James A. Bealmear & Sons Co.,* 135 Md. 690, 109 A. 466. Still later, the right to recover damages for delay was reaffirmed, but it was expressly held that in such an action the condemnation award cannot be recovered. *Petroli v. Mayor & City Council of Baltimore,* 166 Md. 431, 435, 171 A. 45. The instant case is not an action for damages for delay. No such action could be maintained against the State because the State has not consented to be sued.

The right of a condemning corporation to abandon condemnation proceedings was restricted, and a right in certain circumstances to obtain a pecuniary judgment against the condemning corporation was given to a property owner, by Chapter 371 of the Acts of 1870, Art. 26, sec. 29, which provides: "In all cases of proceedings to condemn lands, for any purpose whatever, under any law or charter, upon the return and ratification of the inquisition by the proper court, and in all cases in which inquisitions may have been heretofore returned and ratified, the said court shall render a judgment against the person or corporation for whose use the condemnation may be so made in favor of the owners named in the inquisition for the amount of the damages awarded by the jury, and unless, within ninety days after condemnation ratified, the same shall be abandoned by written notification to said owners, execution may immediately thereafter issue on said judgment, as in other cases of judgment rendered in courts of law." In *Merrick v. Mayor, etc. of Baltimore,* 43 Md. 219, in which the opinion of Judge Brown in the lower court was adopted by this court, Judge Brown said: "The Act clearly implies, that in proceedings to condemn land, the *return*

and *ratification* of the inquisition by the proper court do not constitute a judgment on which an execution can issue, but it provides that on such return and ratification the court shall render a judgment against the persons or corporations for whose use the condemnation may be made, in favor of the owners named in the inquisition, for the amount of damages awarded by the jury, and it gives ninety days after ratification in which the property may be abandoned, before execution can issue. Now to what class of cases does the Act apply? To those certainly which are provided for by the Acts of 1868, ch. 471, secs. 170-175, inclusive, that is, to cases where corporations are authorized to acquire land, etc., by condemnation. * * * And the Act of 1870, ch. 371, also applies to all other cases of condemnation under any special Act, where there is an inquisition of a jury which is required to be returned to court for confirmation. * * * Three things are made necessary by the Act of 1870, Ch. 371, in the cases to which it applies: first, a return of the inquisition; second, a ratification thereof by an order of the court; and third, a judgment against the person or corporation for whose use the condemnation is made." 43 Md. 234. The Act of 1868, ch. 471, secs. 170-175, Art. 23, secs. 329-334, "Condemnation of Property by Corporations", (part of the general corporation law of 1868), apparently the first general condemnation law in Maryland, was applicable to corporations "incorporated under the laws of this State", which manifestly does not include the State itself. It was held in the *Merrick* case that the Act of 1870 does not apply to Baltimore street openings, where the valuation is made by a Board of Commissioners and not, except on appeal, by a jury. 43 Md. 235. This decision has always been adhered to, and the procedure for opening, closing, widening or straightening highways is excepted from the application of the general condemnation law of 1914. Art. 33A, sec. 15.

As has already been stated, the general condemnation law of 1914 is applicable to all condemnation proceedings (except highway cases) conducted by the State or any

municipal or other corporation or person. Art. 33A, sec. 15. Upon any verdict becoming final, if it is "for the petitioner on the right to condemn and assessing damages to the defendants", the court upon the verdict "shall forthwith enter a judgment in favor of each defendant against the petitioner for the amount of damages or compensation awarded" him and costs. Art. 33A, sec. 11. In *Pitsnogle v. Western Maryland Railway Co.*, 123 Md. 667, 91 A. 831, Ann. Cas. 1916B, 1171, it was held that the condemnation Act of 1912 (repealed and reenacted with amendments by the Act of 1914) does not repeal, and is not inconsistent with, the Act of 1870, and that a railroad company may, within ninety days after verdict but before judgment, abandon a condemnation. In *State Roads Commission v. Redmiles*, 176 Md. 677, 679, 6 A. 2d 551, it was held that the State Roads Commission likewise may, within ninety days but after judgment, abandon a condemnation under the Act of 1914. In the *Redmiles* case it is said that the right to abandon is "provided for" in the Act of 1870, but elsewhere in the opinion, and more fully in the *Pitsnogle* case, it is shown that the right to abandon long antedated the Act of 1870, *i. e.*, was not created but restricted by that act. In the *Pitsnogle* case the court said, of the Condemnation Act of 1912, what is equally applicable to the amendatory Act of 1914: "Chapter 117 of the Acts of 1912 does not in terms repeal any of the prior legislation upon condemnation, except wherein the same may be inconsistent with the provisions of that act. The inquiry now is, has the Act of 1912 rendered nugatory the prior decisions and repealed Section 30 of Article 26? Nowhere in the Act of 1912 is there any provision whatever made for abandonment of the proceedings when once begun. This in itself would be, at least, an indication of the intention of the Legislature that they did not intend, by the enactment of a new procedure to acquire property through the power of eminent domain, to change the long-settled rule upon the question." 123 Md. 672, 91 A. 831, 833, Ann. Cas. 1916B, 1171.

We think neither the Act of 1870 nor the Act of 1914, separately or together, gives a property owner a right to obtain a pecuniary judgment against the State in a condemnation case. Appellee admonishes us that immunity of the sovereign from suit is a waning dogma, and is yielding to more modern ideas of justice to the individual. See *Great Northern Ins. Co. v. Read,* 322 U. S. 47, 59, 64 S. Ct. 873, 88 L. Ed. 1121, dissenting opinion. The United States has consented to be sued in contract since 1855, and in tort since 1946. In the Bankruptcy Act of 1898 it has narrowed its priorities under former acts. *Guarantee Title & Trust Co. v. Title Guaranty & Surety Co.,* 224 U. S. 152, 32 S. Ct. 457, 56 L. Ed. 706. But any surrender of sovereign immunity must be made by the legislature, not by the courts. With the exception of recent statutory provisions for suit against state officials for tax refunds, Maryland has not consented to be sued. "Courts should not hold that immunity from suit, one of the highest attributes of sovereignty, has been waived, except in cases of positive consent given, or by necessary and compelling implication". *Dunne v. State,* 162 Md. 274, 288, 289, 159 A. 751, 757. "Governments are immune from suit by individual citizens, unless the right is expressly given". *Cox v. Anne Arundel County,* 181 Md. 428, 431, 31 A. 2d 179, 181.

The Act of 1870 authorizes "judgment" against the condemning "person or corporation". "Person" may, when such an intention is manifest, but ordinarily does not, include the state. *Huffman v. State Roads Commission,* 152 Md. 566, 584, 137 A. 358; *cf. State v. Rich,* 126 Md. 643, 648-649, 95 A. 956. The act of 1870 has been held applicable primarily to cases of "corporations incorporated under the laws of this State", which manifestly does not include the State. *Supra.* The evident purpose of the act was to relieve property owners of suspense and hardship through delay on the part of condemning corporations. In 1870, or even now, Baltimore street cases were probably among the most numerous condemnations in the state, and the City of Baltimore was per-

haps one of the principal offenders in the matter of delays. Nevertheless by a somewhat strict construction the act was held inapplicable to such cases. We think it also inapplicable to condemnations by the State itself, which in 1870 were rare, and (excluding State Roads Commission cases) still are. Ordinarily it would be impossible for the State to abandon a condemnation within ninety days except during a session of the legislature. It could not have been intended, in condemnation cases, to subject the State (which in ordinary cases cannot be sued at all) to a more stringent liability to pecuniary judgment than corporations, public or private, which are liable to judgments in ordinary cases. In dealing (even involuntarily) with the State, delay must be expected. "Men must turn square corners when they deal with the Government". *Rock Island etc. Railway Co. v. United States,* 254 U. S. 141, 143, 41 S. Ct. 55, 56, 65 L. Ed. 188.

Nor was the Act of 1914 intended to subject the State to pecuniary judgments in condemnation cases. That act and the preceding Act of 1912 were designed, not to change substantive rights, but to reform condemnation procedure and make it uniform, especially by substituting for a "sheriff's jury", which had long ago fallen into disrepute, a "jury in court". *Pitsnogle v. Western Maryland Railroad Co.,* 119 Md. 673, 682, 87 A. 917, 46 L. R. A., N. S., 319. *Cf.* Art. 23, section 206 (railroad company condemnation Act of 1876) ; Art. 23, sections 329-334 (general condemnation Act of 1868). It has been held that the Act of 1870 was not repealed by these acts of 1912 and 1914. *Supra.* Nor was it enlarged thereby. Under Art. 33A, section 11, we think a "judgment" against a "corporation or person" to which the Act of 1870 is applicable is like any ordinary pecuniary judgment; a "judgment" against the State is not an ordinary pecuniary judgment, but amounts to no more than a confirmation of an "inquisition" under procedure prior to 1912. In the *Redmiles* case, *supra,* it was not attempted to enforce a pecuniary "judgment" against the State

Roads Commission, but to set up such a "judgment" in bar of subsequent condemnation of part of the same land. We intimate no opinion as to whether a condemnation "judgment" against the State Roads Commission can be enforced as a pecuniary judgment.

Appellee contends, and the lower court holds, that the instant case is within a principle, stated in *Ritchie on Municipal Condemnation in Maryland,* sec. 184, that "while the general rule is * * * that the city may abandon proposed improvements at any time before actual payment or tender of the damages awarded, this is not so, if the Legislature has made the adoption of the improvement in question obligatory", citing *Baltimore, Mayor etc. of v. Reitz,* 50 Md. 574, and other cases. The rule stated, and the cases cited, by Mr. Ritchie are applications of the familiar principle that the legislature, in particular instances, may impose upon a municipal corporation or other state instrumentality a mandatory duty to levy taxes, spend money or exercise some other usually discretionary power in a specified way. This principle has no application in the instant case. The Shepherd Act may make it mandatory for the State's Attorney to institute condemnation proceedings and conduct them "to a finality", *i. e.,* to a "judgment" of condemnation and assessment of compensation. But neither by the Shepherd Act nor since has the Legislature, by appropriating money for the purpose, compelled or even empowered the State's Attorney or anyone else to *take* the Thelin lease by paying the Thelin "judgment."

Appellee earnestly contends that by the judgment under the Shepherd Act, that the land leased to Thelin is a natural bed or bar, this land was taken from Thelin by the State and thrown open to the public. The son of another lessee testified that after his father's condemnation case "the oystermen shot me away" from "our ground". This contention, when made against the constitutionality of the Shepherd Act, was rejected by this court in *Cox v. Revelle,* 125 Md. 579, 94 A. 203, L. R. A. 1915E, 443, on account of the express provision of the

act that "no right, interest or property" of the lessee "shall be divested until the compensation awarded in such condemnation proceedings * * * has first been paid * * * by the State of Maryland". "The appellant's contractual rights are thus duly regarded and protected by the law, and are required to yield only to the sovereign power of eminent domain". 125 Md. 584, 94 A. 203, 205, L. R. A. 1915E, 443. If Thelin's property was taken or damaged by force by a lawless individual or mob, such a wrong was not actionable by suit against the state or anyone else except the actual wrongdoers. If his property had been taken, without compensation, by state officials, acting under the purported authority of a statute, the statute would have been unconstitutional and the officials would have been tort-feasors, personally liable, but the state could not have been sued. *Dunne v. State, supra.*

Appellee's contention that the Act of 1916, ch. 582, violates the provision of Art. 3, sec. 33 of the Maryland Constitution, that "the General Assembly shall pass no special law for any case for which provision has been made by an existing general law" is without merit. There was and is no general law authorizing any state official or board formally to abandon oyster condemnation proceedings which the Shepherd Act made it the duty of the State's Attorney to "conduct to a finality"—short of payment and taking.

Appellee contends, and the lower court apparently holds, that by reason of laches and the doctrine of *res judicata* the state has lost the right to abandon the Thelin condemnation proceedings—and has incurred liability for a pecuniary judgment. If the "defense" of laches were available against the state (which the state denies) and the question were otherwise open, it would be necessary to consider how the "defense" of laches could constitute a cause of action, and also to weigh the fact that though the state did not formally abandon the Thelin condemnation until long after the expiration of the Thelin lease, it lost no time in indicating, at the first session of the General Assembly (in 1916), its dissatisfaction with

the Somerset County condemnation awards and its unwillingness to take the leases by paying the awards.

We think, however, that the questions of laches and *res judicata* are both disposed of by what we have said about the right of the state to abandon the condemnation proceedings and the absence of consent of the state to be sued—and the consequent lack of power or jurisdiction of the courts to entertain suit, or enter judgment, against the state. *Hans v. State of Louisiana*, 134 U. S. 1, 3, 16, 18, 10 S. Ct. 504, 33 L. Ed. 842; *Smith v. Reeves*, 178 U. S. 436, 438, 442, 445, 449, 20 S. Ct. 919, 44 L. Ed. 1140; *Dunne v. State, supra*. There was in 1915, in 1928 and in 1940, and there is now, a total absence of consent to be sued and of power or jurisdiction to entertain suit or enter judgment against the state. As neither the Governor, the Attorney General nor the State's Attorney could directly consent to suit or judgment, manifestly they could not indirectly do so by omitting to defend the first *scire facias* proceedings or to appeal in the second. A judgment by a court without jurisdiction over the parties is not merely erroneous, but "is absolutely void and may be assailed at all times, and in all proceedings by which it is sought to be enforced". *Hanley v. Donoghue*, 59 Md. 239, 243, 244, 43 Am. Rep. 554; *Wilmer v. Epstein*, 116 Md. 140, 145, 81 A. 379. In other words, a void judgment is subject to attack either directly by appeal or collaterally. *Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565; *Staley v. Safe Deposit & Trust Co.*, 189 Md. 447, 455, 56 A. 2d 144, 148; *Keen v. Keen*, 191 Md. 31, 38-40, 60 A. 2d 200, 203-205. It does not constitute *res judicata*. *Presstman v. Silljacks*, 52 Md. 647; *Josselson v. Sonneborn*, 110 Md. 546, 552, 73 A. 650.

For present purposes it is immaterial whether a judgment on *scire facias* be regarded as a new judgment, which in some respects or in at least one state it is, or as a revival of an old judgment, which for most purposes it is. *Brooks v. Preston*, 106 Md. 693, 704, 68 A. 294; *Owens v. Henry*, 161 U. S. 642, 645, 16 S. Ct. 693, 40 L. Ed. 837; *Freeman on Judgments* (5th Ed.), secs. 1091-

1092, 1100-1102; *Black on Judgments* (2d Ed.), secs. 482A, 484, 496, 498. Mr. Poe says it is "a new judgment, having all the characteristics of the original upon which the *scire facias* was founded". *Poe on Practice* (Tiffany Edition), § 585. In either aspect the court was equally without power or jurisdiction to enter a new, or revive an old, "judgment" against the state—except, as we have said, a mere "judgment" in the nature of an inquisition, on which no execution could issue.

Appellee bitterly complains of unfairness on the part of the state in its treatment of appellee and the other oyster lessees. He quotes an opinion of Attorney General Ritchie to Governor Harrington on January 21, 1916, in which the Attorney General advised the Governor that in his judgment there was no doubt about the state's power to abandon the condemnation proceedings at any time before payment of the damages assessed, but said: "Nevertheless, I think that fairness to the lot owners requires that if the condemnations are to be abandoned, some formal determination to that effect should be made by the State, because otherwise the lot owners could not know with certainty whether their lots were to be taken or not, and they would probably not feel justified in cultivating their lots while the possibility existed that the State might decide to pay the awards and take over the property. Since the Legislature is the body which directed that these condemnations should be taken, I think that the Legislature is the body which should now determine that the condemnations are to be abandoned, if that course is decided upon. Therefore, if the condemnations are to be abandoned, then I think that the Legislature should pass an act so declaring, and that upon the passage and approval of that act, an order should be filed in each one of the cases dismissing, abandoning and non-prossing the petitions, and releasing the judgments of condemnation. In the event that you decide to recommend such a course to the Legislature, I have drafted and enclose you a bill which will accomplish the purpose". The Legislature did not pass such a bill as Attorney

General Ritchie recommended, but did enact Chapter 582 of the Acts of 1916. If appellee has any just claim for damages by delay, such claim, in the absence of power or jurisdiction of the courts to entertain it, can be presented only to the legislature.

> *Order reversed, with costs, and cause remanded with directions to mark the condemnation proceedings "dismissed" and to strike out the judgment.*